399 Mass. 341                                                    341

Leahy v. Local 1526, American Federation of State, County, & Municipal Employees.

WILLIAM LEAHY vs. LOCAL 1526, AMERICAN FEDERATION
OF STATE, COUNTY, AND MUNICIPAL
EMPLOYEES & others.

Suffolk.   November 6, 1986. — March 5, 1987.

Present: HENNESSEY, C.J., WILKINS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Labor Relations Commission. Labor,* Action against labor union, Fair repre-
sentation by union, Judicial relief, Arbitration, Collective bargaining,
Damages. *Administrative Law,* Primary jurisdiction, Judicial review.
*Jurisdiction,* Labor case, Primary jurisdiction. *Res Judicata. Contract,*
Collective bargaining contract. *Arbitration,* Discretion of arbitrator, Ju-
dicial review. *Damages,* Fair representation by union.

On appeal by a labor union from a judgment in the Superior Court establish-
ing the union's liability for breach of its duty of fair representation of
an employee on claims which had previously given rise to a grievance
proceeding against his employer, this court, although stating that claims
against a labor union concerning the union's constitutionally based duty
of fair representation should ordinarily be heard in the first instance by
the Labor Relations Commission, held that the judge in this case did
not err in declining to invoke the doctrine of primary jurisdiction, where
there was no genuine issue as to any material fact concerning the union's
liability requiring the application of the commission's expertise, where
the union was not prejudiced by not having its case heard first by the
commission, and where the employee had no notice prior to commencing
his action that he should have first pursued his complaint with the
commission inasmuch as he had reasonably relied on State and Federal
precedent indicating that the courts had concurrent jurisdiction over cases
concerning the duty of fair representation. LYNCH, J., concurring.
[345-351]

In an action in the Superior Court against a union for breach of the duty of fair
representation in which the union contended that a prior decision of the
Labor Relations Commission should have precluded hearing the present
action, the judge did not err in denying the defendant's motion to dismiss
the plaintiff's claim on the basis of res judicata, where language in the
defendant's answer was inadequate to raise the affirmative defense of
res judicata, and where, even assuming that the defendant had properly
raised the defense, the record clearly indicated that the proceedings

before the commission never reached the point of a judgment on the merits of the issue in this case. [351-352]

Where all of an employee's claims giving rise to a grievance proceeding arose since 1967 under successive collective bargaining agreements between a labor union and his employer, an arbitrator's award of damages to the employee was not limited to damages incurred after July 1, 1975, by language in a collective bargaining agreement effective on that date, stating that the "arbitrator shall have no power to recommend any right or relief for any period of time prior to the effective date of this Agreement," and consequently a judge, in an action by the employee against the union for breach of the duty of fair representation, did not err in calculating damages from 1967. [352-353]

In an action by an employee of a city against a labor union for breach of the union's duty of fair representation of the employee on claims which had previously given rise to a grievance proceeding against the city, the union was liable to the employee for what the employee would have received in compensation from the city had the union fulfilled its duty. [353-354]

In an action by an employee of a city against a labor union for breach of its duty of fair representation, there was no merit to the union's contention that it was liable to the plaintiff for damages only from 1973, the year during which the union and the city resolved a grievance on the plaintiff's behalf, although without his knowledge, which recognized the plaintiff as a member of the bargaining unit, where the plaintiff was clearly a member of the bargaining unit since 1967. [354]

In an action by an employee against a labor union for breach of its duty of fair representation in grievance proceedings against his employer involving the calculation of seniority rights, language in a collective bargaining agreement, which deemed waiver of grievances "not presented . . . within ten (10) working days of the . . . failure or occurrence . . . of the incident upon which the grievance is based," did not limit the employee's recovery, where the miscalculation of his seniority and the resulting underpayments were an ongoing harm, not an isolated incident. [354]

In an action by an employee of a city against a labor union for breach of the union's duty of fair representation of the employee on claims which had previously given rise to a grievance proceeding against the city, the judge properly awarded interest and costs to make the plaintiff whole for his damages caused by the union's breach. [354]

In an action by an employee of a city against a labor union for breach of its duty of fair representation of the employee on claims which had arisen since 1967 under collective bargaining agreements between the union and the city, the judge was warranted in concluding that the plaintiff had been due seniority benefits since 1967 and awarding the amount stipulated by the parties, and that, furthermore, expert testimony was not required to prove what an arbitrator would have awarded had the

union's demand for arbitration been timely, where evidence before the judge, including evidence presented by the union itself, warranted a finding that the plaintiff would have prevailed on the merits of his grievance. [355]

CIVIL ACTION commenced in the Superior Court Department on August 18, 1981.

Motions for summary judgment were heard by *Ernest S. Hayeck,* J., and, after further hearing, damages were assessed by *Haskell C. Freedman,* J., each sitting under statutory authority.

The Supreme Judicial Court granted a request for direct appellate review.

*Wayne Soini* for the defendants.

*Frank J. Teague* for the plaintiff.

*John B. Cochran,* for Labor Relations Commission, amicus curiae, submitted a brief.

HENNESSEY, C.J. The plaintiff, William Leahy, brought this action on August 18, 1981, in the Superior Court against Local 1526, American Federation of State, County, and Municipal Employees and several of its officers (union) for breach of the duty of fair representation as the exclusive statutory bargaining agent. A judge granted the plaintiff's motion for summary judgment establishing liability of the union. After the parties filed various stipulations and memoranda, and after a hearing, a different judge assessed damages in the amount of $11,303.71, with interest from August 18, 1981. The union appeals, arguing that the court lacked jurisdiction because the question of the duty of fair representation is within the primary jurisdiction of the Labor Relations Commission (commission), that the plaintiff's action should have been barred on the basis of res judicata, and that the second judge erred in calculating the plaintiff's damages. We granted the union's application for direct appellate review. We affirm the judgment.

We summarize the facts as found by the first judge. The plaintiff was employed by the Boston Public Library as a building custodian from May, 1956, until September, 1983. Initially, the plaintiff worked as a temporary, part-time employee.

In 1958, he became a permanent, part-time employee, and in 1962 he became a permanent, full-time employee.

In 1967, the union became, through a collective bargaining agreement with the city of Boston (city), the exclusive bargaining agent for library employees, including the plaintiff. In 1973, the union filed and later settled a grievance with the library concerning unpaid benefits due the plaintiff without informing the plaintiff of this grievance filed on his behalf.

In 1977, the plaintiff advised the union that the library credited him with seniority, on which salary, vacations, and sick leave were based, only from the date of the 1973 grievance settlement between the library and the union. The plaintiff argued that his seniority should date from either 1958, when he became a permanent employee, or from 1962, when he became a full-time employee. The union agreed with the plaintiff, and presented the grievance to the library. The union proceeded through the first three steps of the four-step grievance procedure defined in the collective bargaining agreement,[1] but was not successful in resolving the grievance.

According to the collective bargaining agreement, the union had forty-five days to submit the grievance to arbitration. See note 1, *supra*. The union did not file a demand for arbitration until September 29, 1978, more than four months beyond the deadline. On January 31, 1979, the arbitrator held a hearing in which the library argued that the union had waived the plaintiff's rights because of the untimely demand for arbitration. The arbitrator heard no other evidence, reserved judgment, and ordered the parties to file briefs on the issue of time-

---

[1] The collective bargaining agreement detailed a four-step grievance procedure: (1) the union presents the grievance orally to the aggrieved employee's immediate supervisor; (2) within ten working days of the incident, the union presents the grievance in writing to the appointing authority; (3) if not resolved within eight working days of step two, the grievance is presented to the city's office of labor relations, which holds a hearing within fifteen working days, and (4) if the grievance is not resolved at step three within fifteen working days, the union, but not any individual employee, may submit the grievance to arbitration. The collective bargaining agreement also provided: "A grievance shall be deemed waived if . . . not submitted to arbitration within forty-five (45) days after presentation at Step #3."

liness by March 22, 1979. The union failed to file a brief on the plaintiff's behalf.[2]

On May 21, 1979, the plaintiff filed a civil action in the Superior Court seeking declaratory relief against the city and the union. After learning of the plaintiff's suit, the union notified the plaintiff that it was withdrawing from representing him in the grievance procedure. On August 8, 1979, the plaintiff filed a charge of prohibited practice against the union with the commission. The plaintiff charged the union with several prohibited practices, including the union's retaliatory withdrawal from representing the plaintiff, its untimeliness in demanding arbitration, and several prior incidents. On September 21, 1979, the commission issued a complaint against the union for its retaliatory withdrawal from representing Leahy, noting that the case before the arbitrator was still pending. The commission dismissed "all other allegations on the grounds that consideration of such allegations is barred by the Commission's six month statute of limitations."

On October 30, 1979, the plaintiff and the union agreed to settle the prohibited practice charge, with the plaintiff agreeing to a dismissal without prejudice of his action in Superior Court in return for the union's agreement to continue representing him at the arbitration proceedings. On June 2, 1980, the arbitrator held a second hearing, and on July 24, 1980, the arbitrator rendered his decision that the plaintiff's grievance was not arbitrable because of the union's untimely demand for arbitration. On August 18, 1981, the plaintiff commenced this action against the union, seeking damages arising from the union's breach of its duty of representation.

1. The union contends that primary jurisdiction over the plaintiff's claims rests with the commission, and, therefore, that the judge erred in not dismissing the plaintiff's claims.[3]

---

[2] On April 2, 1979, the union wrote the arbitrator, requesting that the hearing be reopened to allow the union to present additional evidence.

[3] Primary jurisdiction, also known as prior resort, is a doctrine which attempts to coordinate the decision making of administrative agencies and the courts. See *Murphy* v. *Administrator of the Div. of Personnel Admin.,* 377 Mass. 217, 220-222 (1979). Primary jurisdiction differs from the related

The doctrine of primary jurisdiction is founded on the principle "which counsels a court to stay its hand when the issue in litigation is within the special competence of an agency." *School Comm. of Greenfield* v. *Greenfield Educ. Ass'n,* 385 Mass. 70, 76 (1982). "By permitting an agency to apply its expertise to the statutory scheme which it is charged to enforce, courts preserve the integrity of the administrative process while sparing the judiciary the burden of reviewing administrative proceedings in piecemeal fashion." *Murphy* v. *Administrator of the Div. of Personnel Admin.,* 377 Mass. 217, 220 (1979). See generally A.J. Cella, Administrative Law and Practice § 1725 (1986).

Labor relations is an area in which the concerns of primary jurisdiction are commonly implicated. The National Labor Relations Act, for example, vests broad authority and discretion in the National Labor Relations Board (NLRB) to deal in the first instance with labor disputes. See *San Diego Bldg. Trades Council* v. *Garmon,* 359 U.S. 236 (1959). The Massachusetts Labor Relations Act, covering public employees, similarly empowers the Massachusetts Labor Relations Commission. See G. L. c. 150E, § 11 (1984 ed.); *School Comm. of Greenfield, supra* at 76. In interpreting the Massachusetts statute, we frequently look to similar portions of the Federal statute. See, e.g., *Norton* v. *Massachusetts Bay Transp. Auth.,* 369 Mass. 1, 2 (1975); *Reilly* v. *Local 589, Amalgamated Transit Union,* 22 Mass. App. Ct. 558, 575 (1986).

The United States Supreme Court has held that the courts have concurrent jurisdiction with the NLRB over breaches of a union's duty of fair representation. *Vaca* v. *Sipes,* 386 U.S. 171, 186 (1967). While noting the importance of the NLRB's

---

doctrine of exhaustion of administrative remedies principally in whether administrative remedies are already underway when the action is brought in court. *Id.* See generally 4 K.C. Davis, Administrative Law § 22.1 (2d ed. 1983). Because the plaintiff had previously taken at least one aspect of his dispute with the union to the commission, this case might be considered under the doctrine of exhaustion of administrative remedies. See *Murphy* v. *Administrator of the Div. of Personnel Admin., supra.* Neither party, nor the commission as amicus curiae, argues this point; moreover, such a characterization would not change our analysis in this case.

primary jurisdiction in most areas, the Court articulated several reasons why, in cases concerning the duty of fair representation, courts would continue to have concurrent jurisdiction with the NLRB. The duty of fair representation, the Court noted, had first been developed by the courts, and subsequently adopted by the NLRB. *Id.* at 181-182. Availability of the courts was important, the Court continued, because of the danger that individual rights, which are subordinated to the collective interests of employees under the statute, would be unprotected by exclusive NLRB jurisdiction over arbitrary or discriminatory union action. *Id.* at 182-183. Moreover, the Court reasoned, the NLRB brought no greater expertise for fair representation cases than did the courts. *Id.* at 181. Finally, the Court pointed out that the courts had jurisdiction under § 301 of the Labor Management Relations Act over a suit by an employee against an employer for breach of contract. As a result, the courts would already be forced to consider many of the same issues as breaches of the duty of fair representation. *Id.* at 187-188.

The union, and the commission as amicus curiae, contend that the factors which support concurrent jurisdiction in *Vaca* v. *Sipes* do not exist under the Massachusetts statute, and that, therefore, we should not follow the Federal rule, but should instead conclude that breaches of fair representation fall within the primary jurisdiction of the commission. In most cases concerning the duty of fair representation, we agree that the dispute should be presented in the first instance to the commission. General Laws c. 150E (1984 ed.) creates a scheme in which the commission is granted broad powers to resolve labor disputes, including those over the duty of fair representation. General Laws c. 150E, § 5, provides: "The exclusive representative shall have the right to act for and negotiate agreements covering all employees in the unit and shall be responsible for representing the interests of all such employees without discrimination and without regard to employee organization membership." Section 10 (*b*) provides in part: "It shall be a prohibited practice for an employee organization or its designated agent to: (1) Interfere, restrain, or coerce any employer or employee in the exercise of any right guaranteed under this

chapter; . . . (3) Refuse to participate in good faith in the mediation, fact finding and arbitration procedures set forth in sections eight and nine." Section 11 grants the commission broad powers to investigate and to resolve complaints of practices prohibited by § 10. The legislative scheme, therefore, contemplates a primary role for the commission.

We believe that the union's conduct in this case falls within the conduct proscribed by § 10. The union, and especially the commission as amicus curiae, argue vigorously that the duty of fair representation in Massachusetts arises from G. L. c. 150E, §§ 5 and 10 (b) (1), and did not originate as a judicial doctrine as under the Federal statute. Therefore, they argue, this court should not follow the interpretation of the Federal statute in *Vaca* v. *Sipes,* 386 U.S. 171 (1967), which concluded that there was concurrent jurisdiction, and should instead find that cases raising the duty, created by the statute, are committed to the commission. While we agree with the interpretation that a breach of the duty of fair representation is a prohibited practice under G. L. c. 150E, § 10, that the duty is found in the statute is not controlling. Because of the importance of the rights given up by individual employees in the designation of an exclusive bargaining agent, grave constitutional problems would arise if there were no duty of fair representation. See *Steele* v. *Louisville & N.R.R.,* 323 U.S. 192, 198-199 (1944). Therefore, even if the Massachusetts statute did not provide for the duty of fair representation, the courts would infer it as a constitutional requirement. *Id.* Consequently, the duty is not merely a creation of the statute committed solely to the commission, and the courts have a continuing interest as the "ultimate protectors of constitutional rights." *Lyons* v. *Labor Relations Comm'n,* 397 Mass. 498, 502 (1986), quoting *Chicago Teachers Local 1* v. *Hudson,* 475 U.S. 292, 307 n.20 (1986).[4]

---

[4] We note that the courts' role of protecting constitutional rights is made difficult where a matter is committed first to an agency under primary jurisdiction, but the agency's procedure does not create a record sufficient for the courts to review, such as the commission's decision not to issue a complaint. See *Vaca* v. *Sipes,* 386 U.S. 171, 182-183 (1967). Cf. *Lyons* v. *Labor Relations Comm'n,* 397 Mass. 498, 501-502 (1986).

As a matter of promoting proper relationships between the courts and administrative agencies, strong policies support the primary jurisdiction of the commission over cases involving the duty of fair representation. The commission can bring consistency to decisions, and in many cases may have relevant expertise beyond that of the courts. See *School Comm. of Greenfield* v. *Greenfield Educ. Ass'n, supra* at 76. The central purpose of the Federal and State labor relations acts, and the agencies they create, is to police the line between employers and unions, ensuring that the collective bargaining process provides a mechanism for peaceful resolution of disputes. See *Vaca* v. *Sipes, supra* at 182; *Hamer* v. *Nashawena Mills, Inc.,* 315 Mass. 160, 163 (1943). Although the relationship between a union and individual employees it represents is not at the very core of the commission's expertise and mission, broader issues are often raised by disputes over the duty of fair representation. For example, the union may choose to settle an individual employee's grievance as part of an over-all negotiating strategy. While the union must represent individuals fairly, it also acts primarily for the collective good of all employees. See *Vaca* v. *Sipes, supra* at 190-191; *Trinque* v. *Mount Wachusett Community College Faculty Ass'n,* 14 Mass. App. Ct. 191, 197-199 (1982); Cox, Rights Under a Labor Agreement, 69 Harv. L. Rev. 601, 625-627 (1956). Such an issue of a union's over-all negotiating strategy is well-suited to the commission's expertise and mission. Therefore, we agree that cases raising the duty of fair representation should normally be decided in the first instance by the commission. Cf. *East Chop Tennis Club* v. *Massachusetts Comm' n Against Discrimination,* 364 Mass. 444 (1973).

Despite the desirability, in most cases, of committing a dispute in the first instance to the commission, in this case several factors support the judge's decision not to invoke the doctrine. Primary jurisdiction is a doctrine exercised in the discretion of the court. *Kartell* v. *Blue Shield of Mass., Inc.,* 384 Mass. 409, 412 (1981). The doctrine does not divest the courts of the power to review cases; rather, it concerns the timing of the court's involvement. The precise function of the

doctrine of primary jurisdiction is "to guide a court in determining whether and when it should refrain from or postpone the exercise of its own jurisdiction so that an agency may first answer some question presented." 4 K.C. Davis, Administrative Law § 22.1, at 81 (2d ed. 1983).

In this case, the Superior Court judge granted the plaintiff's motion for summary judgment, finding no genuine issue as to any material fact concerning the union's liability for its breach of the duty of fair representation. Indeed, at oral argument before this court, the union conceded that it was at fault in its mishandling of the plaintiff's grievance. The absence of any dispute over the union's breach in this case counsels in two ways against dismissing the plaintiff's claim. The commission, on these facts, could only have found a breach by the union. The plaintiff, on the other hand, would be seriously prejudiced because the six-month period for filing a grievance with the commission has long since passed. See 402 Code Mass. Regs. § 15.03 (1981).

Second, the absence of dispute over the facts establishing the union's fault removes one of the principal reasons for the doctrine of primary jurisdiction. Where facts are in dispute, and their resolution requires the application of the agency's expertise, it is particularly appropriate that the agency first decide the issue. *Murphy* v. *Administrator of the Div. of Personnel Admin.*, 377 Mass. 217, 221 (1979). *East Chop Tennis Club* v. *Massachusetts Comm'n Against Discrimination, supra* at 451. Where the agency does not have such a fact-finding role, or the dispute does not require peculiar expertise, there is less call for invoking primary jurisdiction. *Murphy* v. *Administrator of the Div. of Personnel Admin., supra* at 222. In this case, there is no genuine issue as to any material fact, and therefore we do not violate the commission's unique role by not requiring the plaintiff to have his case heard first by the commission.

One final matter convinces us that we should not dismiss the plaintiff's claim under the doctrine of primary jurisdiction. The plaintiff not only had no notice that prior resort to the commission would be required, but he also reasonably relied on

Federal and State precedent indicating that the courts had concurrent jurisdiction over cases concerning the duty of fair representation. See, e.g., *Vaca* v. *Sipes, supra; Balsavich* v. *Local Union 170 of the Int'l Bhd. of Teamsters,* 371 Mass. 283, 286-287 (1976); *Norton* v. *Massachusetts Bay Transp. Auth.,* 369 Mass. 1 (1975); *Trinque* v. *Mount Wachusett Community College Faculty Ass'n,* 14 Mass. App. Ct. 191 (1982) (employee covered by G. L. c. 150E); *Berman* v. *Drake Motor Lines, Inc.,* 6 Mass. App. Ct. 438 (1978). We conclude that it would be unfair, and would not serve the purposes of primary jurisdiction, to dismiss the plaintiff's claim and thereby deny him a remedy. The plaintiff acted diligently in all available forums to protect his rights, reasonably relying on State and Federal precedent, and does not appear to have engaged in forum shopping to seek undue advantage.

In summary, claims concerning the duty of fair representation should ordinarily be heard in the first instance by the commission. In this case, however, the judge did not err in declining to invoke the doctrine of primary jurisdiction because there were no facts requiring agency expertise, the union was not prejudiced, and the plaintiff had no notice that he should first pursue his complaint with the commission because he reasonably relied on State and Federal precedent.[5]

2. The union argues that the judge erred in denying its motion to dismiss the plaintiff's claim on the basis of res judicata. The union contends that the commission's decision on September 21, 1979, should preclude rehearing the plaintiff's claim. We disagree.

The union was required to raise the affirmative defense of res judicata in its answer. Mass. R. Civ. P. 8 (c), 365 Mass. 749 (1974). Failure to raise an affirmative defense normally constitutes a waiver of that defense. See *Methuen Retirement Bd.* v. *Contributory Retirement Appeal Bd.,* 384 Mass. 797

---

[5] In exercising the doctrine of primary jurisdiction, where the entire controversy is not within the exclusive jurisdiction of an agency, in many cases the proper course would be for the court to stay the action instead of dismissing it. *J. & J. Enterprises, Inc.* v. *Martignetti,* 369 Mass. 535, 540 (1976).

(1981); J.W. Smith & H.B. Zobel, Rules Practice § 8.6, at 797-798 (1974 & Supp. 1986). The union asserts that language in its answer raised the defense;[6] however, we do not interpret that language to raise the affirmative defense of res judicata. See *Lewis v. Russell,* 304 Mass. 41, 44 (1939) ("It is not enough that the defence be suggested or hinted at, or even that the plaintiff be reasonably caused to expect that it will be asserted").

Even if we were to conclude that the union had properly raised the affirmative defense of res judicata, we would conclude that the judge did not err in denying the union's motion to dismiss. From our review of the record, it is clear that the proceedings before the commission never reached the point of a judgment on the merits of the issue in this case. Because the commission's complaint was not a judgment on the merits of the same claim, the plaintiff's claim was not barred by res judicata. *Almeida v. Travelers Ins. Co.,* 383 Mass. 226, 229 (1981).

3. Finally, the union raises several challenges to the judge's calculation of damages. First, the union points to language in the 1976 collective bargaining agreement which states: "The arbitrator shall have no power to recommend any right or relief for any period of time prior to the effective date of this Agreement." The union argues that the plaintiff's damages must be measured by what the arbitrator would have awarded had the union properly pursued his claim. This contract provision, the union reasons, limited the arbitrator's award to damages in-

---

[6] The plaintiff's complaint alleged: "16. The defendant Union allowed both of the aforementioned grievances to languish unattended notwithstanding repeated requests for action by plaintiff. Only after plaintiff finally filed charges with the Labor Relations Commission against the Union, pursuant to G. L. c. 150E, and the Labor Relations Commission subsequently issued a complaint of prohibited practice against the Union, did the Union seek to finally arbitrate plaintiff's grievances. Hearings were finally scheduled with the American Arbitration Association on plaintiff's first grievance on June 2, 1980, and on his second grievance on September 30, 1980."

The union's answer stated: "16. Denied; by way of further answer, the Union expedited the first arbitration to hearing by agreement between counsel. The unfair practice complaint, itself untimely, was withdrawn."

curred after July 1, 1975, the effective date of the 1976 collective bargaining agreement. The arbitrator's authority to provide relief was not so limited. Arbitrators have broad discretion in interpreting collective bargaining agreements and in providing complete relief to an aggrieved party. *School Comm. of W. Bridgewater* v. *West Bridgewater Teachers' Ass'n,* 372 Mass. 121, 125 (1977). *School Comm. of Danvers* v. *Tyman,* 372 Mass. 106, 114 (1977). Judicial review of an arbitrator's decision is limited. G. L. c. 150C, § 11 (1984 ed.). *Concerned Minority Educators* v. *School Comm. of Worcester,* 392 Mass. 184, 187 (1984). This particular provision appeared in the 1967 collective bargaining agreement, when the union first became the bargaining agent.[7] While the provision might exclude relief from grievances prior to when the union became the bargaining agent, we do not believe that an employee, aggrieved under a collective bargaining agreement, loses the right to pursue that grievance on the execution of the next agreement. See *Old Rochester Regional Teacher's Club* v. *Old Rochester Regional School Dist. Comm.,* 398 Mass. 695, 698-699 (1986) (employer required to arbitrate after collective bargaining agreement expired), citing *Nolde Bros.* v. *Local 358, Bakery & Confectionery Workers' Union,* 430 U.S. 243, 249 (1977); *School Comm. of W. Bridgewater* v. *West Bridgewater Teachers' Ass'n,* 372 Mass. 121, 126 (1977) ("a contrary result would bar any substantial relief for violations committed during the final year of such an agreement"). All the employee's claims here arose since 1967 under collective bargaining agreements between the union and the city. We cannot say the judge erred in calculating damages from 1967.

The union also argues that, because the city, and not the union, underpaid the plaintiff, the union should not be liable to the plaintiff. The union misapprehends the nature of its liability. Because of the union's breach of its duty of fair representation, the plaintiff lost his opportunity to collect from the city. As in a legal malpractice action, the union is liable

---

[7] It is clear from the record that this provision was contained in the 1967 and 1976 agreements; it is not clear from the record whether it was also contained in the 1969 and 1972 agreements.

for what the plaintiff would have received had the union fulfilled its duty. See *McLellan* v. *Fuller*, 226 Mass. 374, 377-378 (1917).[8]

The union asserts that it is liable only from 1973, when the union and the city resolved a grievance on the plaintiff's behalf (although without his knowledge) recognizing the plaintiff as a member of the bargaining unit. The union's own grievance in 1973 sought "payment to [the plaintiff] of all vacations, holidays, sick time, etc." The plaintiff was properly a member of the bargaining unit since 1967. The union's contention is without merit.

The union next argues that another provision in the collective bargaining agreement, which deems waiver of grievances "not presented . . . within ten (10) working days of the occurrence, or failure of occurrence, whichever may be the case, of the incident upon which the grievance is based," limits the plaintiff's recovery. We do not interpret this clause to limit the plaintiff's claim in this case. The miscalculation of his seniority and the resulting underpayment was an ongoing harm, not an isolated incident. The plaintiff was not required to file a separate grievance within ten days' receipt of each paycheck.

The union challenges the judge's award of interest from August 18, 1981, the date the plaintiff filed this action in the Superior Court. The judge properly awarded interest to make the plaintiff whole for his damages caused by the union's breach. G. L. c. 231, § 6B (1984 ed.). Cf. *School Comm. of Newton* v. *Labor Relations Comm'n*, 388 Mass. 557, 579 (1983). Nor did the judge err in awarding costs. See G. L. c. 261, §§ 1, 13 (1984 ed.); Mass. R. Civ. P. 54 (d), as appearing in 382 Mass. 821 (1980). We need not consider the union's argument on attorney's fees, because the judge made no such award.

---

[8] The union points to the difficult issue of apportioning liability where the plaintiff is able to compel arbitration with the employer because of the union's breach. See, e.g., *Bowen* v. *United States Postal Serv.*, 459 U.S. 212 (1983); *Vaca* v. *Sipes*, 386 U.S. 171 (1967). In this case, however, that issue is not presented because the employer is not liable due to the waiver provision in the collective bargaining agreement. The union is liable for all the plaintiff's damages resulting from the union's breach.

Finally, the union argues that the plaintiff did not prove his damages, and that an expert witness was required to prove what an arbitrator would have awarded had the demand for arbitration been timely. We disagree. The evidence before the judge, including the union's, warranted a finding that the plaintiff would have prevailed on the merits of his grievance. Nor was expert testimony required. The union's reliance on *Pongonis* v. *Saab*, 396 Mass. 1005 (1985), is misplaced. In that case, expert testimony was required to establish the standards of care for legal malpractice, not to assess the plaintiff's damages. We note the unfairness of the union's position, arguing that the judge could not ascertain what an arbitrator would have awarded, when the union's own breach precluded the arbitrator from deciding the plaintiff's claim. The judge was warranted in concluding that the plaintiff had been due seniority benefits since 1967, and awarding the amount stipulated by the parties.

4. In conclusion, although cases raising the duty of fair representation should normally be considered in the first instance by the Labor Relations Commission, in this case the judge did not err in declining to exercise the doctrine of primary jurisdiction. In addition, the plaintiff's claim was not barred by res judicata. Finally, the judge did not err in the calculation of the plaintiff's damages.

*Judgment affirmed.*

LYNCH, J. (concurring). I concur in the result reached by the court but disagree with the court's conclusion that claims concerning the duty of fair representation invoke the primary jurisdiction of the Labor Relations Commission (commission).

The opinion acknowledges that to date no decision of this court has established primary jurisdiction in the commission in fair representation cases. Indeed, the court professes to recognize "Federal and State precedent indicating that the courts had concurrent jurisdiction over cases concerning the duty of fair representation." *Ante* at 351. Yet the court nonetheless

states that primary jurisdiction normally rests in the commission, citing *East Chop Tennis Club* v. *Massachusetts Comm'n Against Discrimination,* 364 Mass. 444 (1973).

We have said that the doctrine of primary jurisdiction is particularly applicable "when the issue in litigation involves 'technical questions of fact uniquely within the expertise and experience of an agency.' *Nader* v. *Allegheny Airlines, Inc.,* [426 U.S. 290, 304 (1976)]." *Murphy* v. *Administrator of the Div. of Personnel Admin.,* 377 Mass. 217, 221 (1979). See generally 5 B.J. Mezines, J.A. Stein & J. Gruff, Administrative Law § 47.02 (1985).

The doctrine is also applied to achieve uniformity and consistency in the application of an agency's regulations. *Casey* v. *Massachusetts Elec. Co.,* 392 Mass. 876, 879 (1984). Such is the case where an agency has been given responsibility for the application of uniform rate schedules, for example, where "there exists a danger that the courts will reach inconsistent results on a case by case basis, and the desired uniformity will be jeopardized." 5 B.J. Mezines, J.A. Stein & J. Gruff, *supra,* § 47.02, at 47-6. See, e.g., *Texas & Pac. Ry.* v. *Abilene Cotton Oil Co.,* 204 U.S. 426 (1907). I believe that neither concern for uniformity nor deference to agency expertise is applicable to duty of fair representation cases. The commission's role in duty of fair representation cases does not implicate the concerns for uniformity that arise in regulatory or rate setting areas. Neither is "the expert and specialized knowledge of the agencies involved." *United States* v. *Western Pac. R.R.,* 352 U.S. 59, 64 (1956). See *Far East Conference* v. *United States,* 342 U.S. 570 (1952). Where the plaintiff complains of a breach of the duty of fair representation, I do not view the commission as possessing any particular expertise or exercising administrative discretion. Here we are not faced with the "highly complex, technical, and intricate questions" normally required to confer primary jurisdiction on an agency. A.J. Cella, Administrative Law and Practice § 1724, at 285 (1986).

In sum, I do not agree that the case for primary jurisdiction has been demonstrated particularly to the extent it requires deferral to the expertise of the commission. Instead, I would adopt the position of the Federal courts which have rejected

application of the primary jurisdiction doctrine to duty of fair representation claims under the Federal statute. See *Vaca* v. *Sipes*, 386 U.S. 171 (1967).