WALTER JOHNSTON vs. SCHOOL COMMITTEE OF WATERTOWN.

Middlesex. November 7, 1988. — February 6, 1989.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Labor,* Collective bargaining, Grievance procedure, Fair representation by union. *Contract,* Collective bargaining contract. *Labor Relations Commission. Jurisdiction,* Labor case. *Administrative Law,* Primary jurisdiction.

An employee was precluded from bringing an action against his employer on a claim for overtime pay without his first having complied with the grievance procedures in the applicable collective bargaining agreement. [25-26]

Where the Labor Relations Commission had primary jurisdiction in the circumstances of a labor dispute involving overtime pay and a union's alleged breach of its duty of fair representation, a judge of the Superior Court incorrectly asserted jurisdiction in the first instance over the claims. [26-27]

CIVIL ACTION commenced in the Superior Court Department on December 15, 1980.

After transfer to the Cambridge Division of the District Court Department and retransfer to the Superior Court, the case was heard by *Elbert Tuttle,* J., on a statement of agreed facts.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Roger H. Randall (Karen A. Meyer* with him) for the defendant.

*Stefan P. Michaud* for the plaintiff.

LIACOS, J.  The school committee of Watertown (school committee) appeals from a judgment in the Superior Court that the school committee had to pay a former employee, Walter Johnston, at an overtime rate in accordance with the terms of a collective bargaining agreement.[1]  The school committee

---

[1] Judgment was entered for the plaintiff on July 20, 1987, in the amount of $4,187.75, plus interest.

claims that Johnston's suit is barred by his failure fully to comply with the grievance procedure provided for in the collective bargaining agreement and by his failure to bring his grievance before the Labor Relations Commission (commission). G. L. c. 150E (1986 ed.). We agree, and we reverse the judgment entered in the Superior Court.

We summarize the facts. Johnston was employed by the school committee as a custodian, working the "late night shift" from 11 P.M. to 7 A.M. He was a member of the Custodians Local 540 of the Service Employees International Union, AFL-CIO (Local 540), which had entered into a labor agreement with the school committee, as the sole and exclusive agent for collective bargaining. At some point during his employment, Johnston asserted to Local 540 that, under the agreement, the school committee was required to give him overtime pay for his Saturday morning hours, from midnight until 7 A.M. The agreement provides, in art. X, § B: "The work week shall be from Monday through Friday inclusive." In a different section (§ F [4]), it provides: "Overtime is defined as any work in excess of the regular work day and work week as specified in Article X, Section A and B." Local 540 determined that the plaintiff's claim was not meritorious. Thus, it refused to represent Johnston in pursuit of his claim. The agreement specifically provides that "[n]othing herein contained will be construed as limiting the right of any employee having a grievance . . . [from] having the grievance adjusted without [the] intervention of Local 540 . . . ." Johnston admits that he did not fully comply with the agreement's four-step grievance procedure.

The trial judge ruled that Local 540 was obligated to pursue Johnston's grievance and that it wrongfully refused to do so. The judge also held, in purported reliance on our recent decision in *Leahy* v. *Local 1526, Am. Fed'n of State, County, & Mun. Employees*, 399 Mass. 341 (1987), that Local 540's refusal enabled Johnston to bring an action against his employer notwithstanding his failure to comply with the contractual grievance procedure. The judge ruled further that Local 540's actions

enabled Johnston to pursue his claim in court rather than before the commission.

1. *The grievance procedure.* Even if we were to assume that Local 540 failed to fulfil its duty of fair representation by refusing to pursue Johnston's grievance, Johnston had the right, clearly expressed in the agreement, to pursue the grievance independent of Local 540. "[An employee] may be represented at all stages of the grievance procedure by a person of his own choosing. When an employee is not represented by Local 540, Local 540 shall have the right to be present and to state its views at all stages of the grievance procedure." See G. L. c. 150E, § 5.

This case falls under the general rule that failure to pursue contractual grievance procedures bars suit against the employer. "Employees may not simply disregard the grievance procedures set out in a collective labor contract and go direct to court for redress against the employer. . . . They must initiate the grievance procedures as the contract provides and it is only when the union fails in its duty to represent them fairly in pressing the grievance . . . that the employees are free to try judicial remedies." (Citations omitted.) *Balsavich* v. *Local Union 170, Int'l Bhd. of Teamsters*, 371 Mass. 283, 286 (1976). See *Azzi* v. *Western Elec. Co.*, 19 Mass. App. Ct. 406, 410 (1985) ("To permit employees to circumvent existing grievance and arbitration procedures, by bringing actions against their employers in the first instance, does not strike us as a commendable practice"). See also *Vaca* v. *Sipes*, 386 U.S. 171, 185 (1967) (under National Labor Relations Act, employee may seek judicial enforcement of contract rights if union wrongfully refused to process grievance *and* if "union has *sole* power under the contract to invoke the higher stages of the grievance procedure" [emphasis added]).[2] *Leahy, supra,*

---

[2] In oral argument before this court, Johnston's appellate counsel asserted that Local 540 had prevented Johnston from exhausting his contractual remedies by failing to inform Johnston what they were. The record belies the assertion that Johnston was uninformed of his contractual remedies. Shortly after Local 540 refused to represent Johnston, the town of Watertown

in no way alters this result. That case involved an employee's suit against his union, and his employer was not a party to that action. *Id.* at 343. Additionally, in *Leahy* the union conceded that it was at fault in not pressing the employee's grievance. *Id.* at 350. Here, the union, not a party, had made no such concession.

2. *Administrative remedies.* *Leahy, supra,* is relevant, however, to the judge's holding that Local 540's alleged breach of its duty of fair representation enabled Johnston to seek relief in court rather than before the commission. In *Leahy, supra* at 347, we stated: "In most cases concerning the duty of fair representation, we agree that the dispute should be presented in the first instance to the commission. General Laws c. 150E [1986 ed.] creates a scheme in which the commission is granted broad powers to resolve labor disputes, including those *over the duty of fair representation*" (emphasis supplied). We address this issue to determine whether this case should be remanded to the Superior Court for further proceedings or should be dismissed.

In *Leahy,* we held that, while disputes of this kind usually should be initiated before the commission, the trial court did not lack jurisdiction notwithstanding the broad authority and discretion vested in the commission to deal with labor disputes. *Leahy, supra* at 346.[3] For three reasons we held that the general rule as to the commission's primary jurisdiction should not apply to the plaintiff employee. First, unlike here, in *Leahy* there was no genuine issue as to any material fact concerning the union's liability. *Id.* at 350. Second, in the absence of disputed facts the commission's expertise was not required. *Id.* Finally, in *Leahy,* the employee reasonably relied on prec-

---

informed him, through his then counsel, "Please be advised that the collective bargaining agreement . . . contains a specific grievance procedure . . . . [We] would recommend . . . that your client file his grievance in accordance with the contract."

[3] See *Leahy, supra* at 346-347, where we discussed the differences between the doctrines of primary jurisdiction and exhaustion of administrative remedies. See also *Murphy* v. *Administrator of the Div. of Personnel Admin.,* 377 Mass. 217, 220 (1979).

edent indicating that courts had concurrent jurisdiction with the commission over cases concerning the duty of fair representation. *Id.* at 351. The case before us is readily distinguishable. Whether Johnston seeks to continue this action against his employer, or whether he initiates an action against Local 540 for alleged breach of duty of fair representation, there are genuine issues of material fact that require the commission's expertise.[4] *Barksdale* v. *Director of the Div. of Employment Sec.,* 397 Mass. 49, 53 (1986). Furthermore, Johnston cites no precedent on which he could have relied reasonably in failing to pursue his contractual remedies. Thus, this is an inappropriate case for the courts to assert their jurisdiction before the commission has had the opportunity to address the issues. The judgment of the Superior Court is therefore reversed, with the direction to enter a judgment of dismissal.

*So ordered.*

---

[4] The agreement's provisions regarding overtime payment are by no means clear. For example, the agreement defines overtime as "work in excess of the regular work day *and* work week" (emphasis added). There is an issue whether the word "and" is conjunctive or disjunctive. Furthermore, the same section in which this definition appears, entitled "Overtime Rate," states that employees working the 11 P.M. to 7 A.M. shift "shall receive an extra ten percent." The plaintiff had received the additional 10%. There is an issue whether this provision for an "overtime rate" is to the exclusion of any other overtime pay for the regular hours of the late night shift. Finally, on the issue of the alleged wrongful refusal to represent Johnston, it is relevant that Local 540 refused to pursue Johnston's grievance in part because it had followed an opposite interpretation of the agreement for the past ten years.