WILLIAM S. REILLY *vs.* MASSACHUSETTS BAY
TRANSPORTATION AUTHORITY & another.[1]

No. 90-P-1098.

Suffolk. December 9, 1991. - April 16, 1992.

Present: DREBEN, FINE, & IRELAND, JJ.

*Labor*, Fair representation by union, Action against labor union, Judicial
relief, Arbitration, Collective bargaining. *Practice, Civil*, Motion in
limine. *Administrative Law*, Primary jurisdiction. *Jurisdiction*, Labor
case, Primary jurisdiction. *Arbitration*, Scope of arbitration, Authority
of arbitrator, Parties. *Damages*, Fair representation by union.

At the jury-waived trial of an employee's claims against his employer and
a labor union, arising from his discharge pursuant to a requirement in
the applicable collective bargaining agreement that employees "become
and remain members of the Union," the judge appropriately admitted
evidence of the union's prior unfair actions toward the plaintiff. [414-
415]

An employee seeking judicial relief from an arbitrator's order that he be
discharged pursuant to a requirement in the applicable collective bar-
gaining agreement that employees "become and remain members of the
Union" was not precluded either by his failure to participate in the
arbitration between the union and his employer, where the agreement
gave him no such right, or, in the circumstances, by his not having
pursued administrative or internal union remedies. [415-417]

A judge was not clearly in error in finding that a labor union's treatment
of a certain employee, who was seeking reinstatement to union mem-
bership as a condition of employment under the applicable collective
bargaining agreement, was unfair and constituted wrongful exclusion
from membership. [417]

Where a labor union's bad faith actions in excluding from full membership
an employee within its collective bargaining unit led to arbitration be-
tween the union and his employer, culminating in the employee's dis-
charge pursuant to a requirement in the collective bargaining agree-
ment requiring employees to "become and remain members of the
Union," the employee had standing to challenge the arbitrator's award
in an action against the union and the employer. [417-418]

Where a labor union's wrongful exclusion of an employee from full mem-
bership had resulted in the employee's discharge pursuant to a require-

[1]Local 589, Amalgamated Transit Union.

ment in the applicable collective bargaining agreement that employees "become and remain members of the Union," a judgment ordering the employee's reinstatement was clearly appropriate [418-419]; the union was to be liable for intervening wage loss [419]; and the union was to be ordered to refrain from further action against the employee before giving him the opportunity of full membership and benefits upon payment of back dues [419-420].

CIVIL ACTION commenced in the Superior Court Department on February 27, 1986.

The case was heard by *John C. Cratsley,* J.

*Phinorice J. Boldin* for Massachusetts Bay Transportation Authority.

*John McMahon* for Boston Carmen's Union, Division 589, Amalgamated Transit Union.

*Richard W. Murphy (Jon R. Maddox* with him) for the plaintiff.

DREBEN, J. This is the third time that a dispute among William S. Reilly; Local 589, Amalgamated Transit Union (union); and the Massachusetts Bay Transportation Authority (Authority) has reached this court. See *Reilly* v. *Local 589, Amalgamated Transit Union,* 22 Mass. App. Ct. 558 (1986) (*Reilly I*), and *Reilly* v. *Local 589, Amalgamated Transit Union,* 31 Mass. App. Ct. 633 (1991) (*Reilly II*). Footnote 27 of *Reilly I, supra* at 580, describes the beginning of the present controversy.

Both prior appeals grew out of the 1972 discharge of Reilly by the Authority and the union's refusal to represent his interests in arbitration. Ultimately, the union acknowledged that its refusal was "for reasons other than the merits of his cases,"[2] and, by order of the Superior Court, the matter was sent to arbitration. The arbitrator ruled Reilly's discharge inappropriate and ordered that he be "made whole for all benefits lost" as a result of the Authority's actions. *Reilly II, supra* at 635. On March 20, 1981, a Superior Court judge confirmed the arbitrator's award and ordered

---

[2]In effect, the union acknowledged that it had violated its duty of fair representation of Reilly. See *Reilly I, supra* at 571.

the Authority to reinstate Reilly to his position as a motor-man "forthwith."[3]

Reilly was reinstated in 1981. Section 101C of the collective bargaining agreement between the union and the Authority required all employees to "become and remain members of the Union" and also provided that any employee who "fails to maintain membership in the Union to the extent of paying regular membership dues and assessments shall not be retained in the employ of the Authority. . . ."

Beginning with his reemployment, Reilly and the union could not agree on the terms of his reinstatement as a union member. Reilly wanted full reinstatement with all benefits, but the union refused to consider him a member in good standing since 1975, the time when Reilly had previously stopped paying dues. When they failed to reach agreement, the union insisted that he be fired for failure to pay dues, the Authority refused, and the union brought the matter to arbitration on December 18, 1985. Reilly, although given notice of the impending arbitration, did not participate in the proceedings. The Authority did not present evidence to the arbitrator, and an award was made which upheld the union's position and ordered Reilly discharged. The Authority complied with the arbitral award in 1986.

Reilly then brought this action in the Superior Court, alleging that he should have been made a party to the arbitration and that his discharge was in violation of the March, 1981 court order reinstating him as an employee. After a jury-waived trial, the trial judge found that the union, rather than accepting responsibility for Reilly's suspension from

---

[3]The March 20, 1981 order also required the arbitrator to assess Reilly's damages "without respect to the question of apportionment" between the union and the Authority. Subsequent to the determination of the amount of damages by the arbitrator, the Authority sought contribution from the union. In *Reilly I*, we upheld the propriety of apportionment but indicated the facts before us were not an adequate basis for us to make such a determination. 22 Mass. App. Ct. at 574-575, 576. In *Reilly II*, we upheld a judgment which apportioned damages by assessing the union for Reilly's increase in loss on account of the union's breach of its duty of fair representation. 31 Mass. App. Ct. at 637-638.

membership in 1975,[4] refused to offer him full and unqualified membership. In particular, while the union gave Reilly the option of paying all back dues or joining as a new member, it also, citing the constitution of the international union, insisted that Reilly could not run for union office until he was again a member in good standing for two years.[5] Reilly rejected both options and did not pay dues. The judge found the action of the union to be a "slavish adherence to formal requirements at the expense of fair play," that waivers of the rule requiring membership for the preceding two years before seeking union office were possible,[6] and that there was no evidence that the union even tried to seek from the international union permission to waive the rule. The judge ruled "that in the highly unusual circumstances of this case — where the union's own failure to represent Mr. Reilly brought about the very problem, cessation of Reilly's membership, of which the union now complains — the union's failure to reinstate Reilly 'whole' constitutes wrongful exclusion from membership on its part. . . . [I]ts invocation of the Authority's contractual obligation to adhere to the requirements of Section 101C of the Agreement effectively calls upon the Authority to legitimize the union's own unjust treatment of Reilly." The judge, after citing *Vaca* v. *Sipes*, 386 U.S. 171, 186 (1967), and *Balsavich* v. *Local Union 170, Intl. Bhd. of Teamsters*, 371 Mass. 283, 286 (1976), both cases discussing a union's violation of its duty of fair representation, ruled "[i]t is impermissible for the Authority to discharge Reilly

[4]Although Reilly was discharged in 1972, he continued to pay dues until 1975. The judge found that his decision to stop paying at that time was "reasonable," particularly in light of the union's refusal to press his grievance.

[5]The international union's constitution provides, "A member to be eligible to office must have been a member in continuous good standing of his or her L[ocal] U[nion] the two years next preceding the day of the nomination meeting . . . ."

[6]Indeed, through the joint efforts of the union and Reilly, Reilly obtained a ruling from the international union that the provision that a "suspended member being in arrears for dues . . . for more than twelve months cannot reinstate himself into membership," was "not applicable under the highly unusual facts and circumstances in this case."

for no other reason than that he has not paid his union dues when the union had failed, after a judicial determination of its own wrongful actions, to reinstate fully its former member, thereby causing that non-payment. Under these circumstances, the discharge of Reilly essentially constitutes a violation of [the] order that Reilly be re-employed by the Authority as if he never were terminated."

A judgment was entered ordering that (1) the arbitration award be vacated; (2) the Authority reinstate Reilly forthwith with all the rights and benefits he held at the time of his discharge; (3) the Authority restore to Reilly "all salary and benefits lost, plus interest, from the date of his discharge in 1986 to the date of his reinstatement"; and (4) the union "refrain from any further action against [Reilly] based on the fact that he is not, as yet, a dues-paying member of Local 589."

Before us are appeals by the union and the Authority. We are in basic agreement with the judge's rulings but deem it appropriate to modify the remedy.

Our discussion will first consider certain procedural claims of the appellants before turning to the merits.

1. *Denial of motion in limine.* The union and the Authority claim error in the introduction by Reilly of evidence of the union's actions which took place before his 1981 reinstatement. This evidence, they urge, allowed Reilly's action to encompass a claim of wrongful expulsion from union membership.

Prior to trial, the union and the Authority moved to limit Reilly's evidence to the two claims alleged in his complaint, namely (1) whether Reilly should have been made a party to the 1985 arbitration and (2) whether the 1986 award that Reilly be discharged violated the 1981 order that the Authority reinstate Reilly.

A trial court has wide discretion to determine the relevancy of evidence. *Commonwealth* v. *Tobin*, 392 Mass. 604, 613 (1984). *Commonwealth* v. *Good*, 409 Mass. 612, 621-622 (1991). Even where the issues raised are not within the scope of the pleadings, a judge, in the absence of prejudice

(that is, an inability by the opposing party to prepare an adequate case or defense), is encouraged by the Massachusetts Rules of Civil Procedure freely to allow amendments to the pleadings to conform to such evidence as serves the merits of the action. See Mass.R.Civ.P. 15(b), 365 Mass. 761-762 (1974).[7]

Moreover, here the evidence could reasonably be viewed as within the matters pleaded. The unfair treatment by the union of Reilly's earlier grievance led to his ceasing to pay dues in 1975. The resulting break in continuous union membership underlay Reilly's claim that the union unfairly deprived him of union benefits including the provision of the international union's constitution, see note 5, *supra*, and thus procured his wrongful discharge in 1986. His 1986 firing was alleged to be a violation of the 1981 court order.

2. *Failure to exhaust administrative remedies.* Pointing to the fact that Reilly knew of the time, place and purpose of the arbitration, the union and the Authority argue that Reilly's failure to participate in the arbitration proceedings precludes him from challenging its results. If his claim was that § 101C of the collective bargaining agreement (requiring maintenance of union membership) did not apply because he was excluded from the union (§ 101D of the agreement), they urge that he was required to participate in the proceedings once arbitration had been invoked by the parties to the collective bargaining agreement.

Reilly did not have a statutory right to intervene, nor was he given such a right by the collective bargaining agreement. Indeed, § 104 of the agreement provided that the grievance procedure "shall apply to all disputes between the *Union and the Authority*, whether any such dispute occurs as the result of a complaint by an individual member of the Union or a complaint by the Union itself" (emphasis supplied). There is nothing in the collective bargaining agreement requiring Reilly to intervene or lose his legal rights.

---

[7]Such amendment can be allowed after judgment or even deemed by an appellate court to have been allowed. See *Geraghty* v. *Mott's Shop-Rite of Holyoke, Inc.*, 377 Mass. 911, 912 (1979).

Moreover, as the judge was warranted in finding, the notice given to Reilly was inadequate. It did not explicitly invite him to attend nor did it inform him of his rights in the arbitration process. It did not tell him whether he could have a lawyer, bring witnesses, or cross-examine the parties. That in some other instances, involving other issues, employees had participated in arbitration proceedings did not require a finding that there was a waiver by Reilly or an obligation binding on him to attend.

The Authority's additional argument that Reilly, if not required to arbitrate, was obliged by G. L. c. 161A, § 19, "to submit his grievance to the state board of conciliation and arbitration or other board having similar powers and duties" does not appear to have been made to the judge prior to the Authority's postjudgment motion for reconsideration. It is doubtful that the State board has the same authority as given to the Labor Relations Commission in *Leahy* v. *Local 1526, Am. Fedn. of State, County, & Mun. Employees*, 399 Mass. 341 (1987). See *Massachusetts Bay Transp. Authy.* v. *Labor Relations Commn.*, 356 Mass. 563, 567 (1970). See also G. L. c. 161A, § 19A, which makes applicable to the Authority and its employees only c. 150A, § 5. Moreover, even if the legislative scheme of G. L. c. 161A, § 19, were interpreted to give the State Board of Conciliation and Arbitration such authority, where, as here, the case was brought prior to the decision in *Leahy* v. *Local 1526, Am. Fedn. of State, County, & Mun. Employees, supra*, Reilly is entitled to rely "on Federal and State precedent indicating that the courts had concurrent jurisdiction [with administrative agencies] over cases concerning the duty of fair representation." *Id.* at 350-351. *Graham* v. *Quincy Food Serv. Employees Assn. & Hosp., Library & Pub. Employees Union*, 407 Mass. 601, 611 (1990). *Vaca* v. *Sipes*, 386 U.S. at 181-183. *Breininger* v. *Sheet Metal Wkrs. Intl. Assn. Local Union No. 6*, 493 U.S. 67, 73-84 (1989). See also *Pattison* v. *Labor Relations Commn.*, 30 Mass. App. Ct. 9, 10, 21 (1991).

Reilly also did not need to exhaust internal union procedures. The dispute between Reilly and the union remained

unresolved from 1981 to 1985. To have prolonged it further would, in our opinion, have "unreasonably delay[ed] [his] opportunity to obtain a judicial hearing on the merits of his claim." *Clayton* v. *International Union, United Auto., Aerospace, & Agric. Implement Wkrs. of America*, 451 U.S. 679, 689 (1981). The union procedure also may have been inadequate to award full relief. *Ibid.*

3. *Wrongful exclusion from union membership.* Urging that it was bound by the constitution of the international union, which was not a party to this proceeding, see *Donahue* v. *Kenney*, 327 Mass. 409, 413 (1951), the union claims the judge's finding of wrongful exclusion is plain error. In view of the international union's determination that the one-year limitation on reinstatement rule was inapplicable under the "highly unusual" facts applicable to Reilly, see note 6, *supra*, and in view of the evidence of earlier hostility by some union members to Reilly's election attempts, see also *Reilly I*, 22 Mass. App. Ct. at 563 n.7, the judge's finding — that the failure by the union even to request from the international union a determination of inapplicability or waiver of the two-year "good standing" rule for eligibility for election was unfair and constituted wrongful exclusion from membership — was not clearly erroneous.

4. *Duty of fair representation and claim that Reilly cannot challenge the 1986 arbitration award.* Under both State and Federal law, a union has the responsibility and duty of fair representation. *Leahy* v. *Local 1526, Am. Fedn. of State, County, & Mun. Employees*, 399 Mass. at 348. *Vaca* v. *Sipes*, 386 U.S. at 177. *Hines* v. *Anchor Motor Freight, Inc.*, 424 U.S. 554, 564 (1976). *Breininger* v. *Sheet Metal Wkrs. Intl. Assn. Local Union No. 6*, 493 U.S. at 73. Even if not required by statute, "the courts would infer [such a duty] as a constitutional requirement." *Leahy, supra. McCormick* v. *Labor Relations Commn.*, 412 Mass. 164, 169 n.9 (1992). See generally A Judicial Guide to Labor and Employment Law § 18-4.1 (Walsh ed. 1990). Where the union has breached this duty, the foregoing authorities permit an employee, at least in cases brought prior to *Leahy*, to bring di-

rectly an action against his employer. See *Balsavich* v. *Local Union 170, Intl. Bhd. of Teamsters,* 371 Mass. at 286. "The union's breach of duty relieves the employee of an express or implied requirement that disputes be settled through contractual grievance procedures; if it seriously undermines the integrity of the arbitral process the union's breach also removes the bar of the finality provisions of the contract." *Hines* v. *Anchor Motor Freight, Inc.,* 424 U.S. at 567.

The circumstances of this case are unusual: Reilly offered to pay all back dues; the union's previous violation of the duty of fair representation had reasonably led Reilly to cease paying dues in 1975, causing him to lose his status as a member "in good standing"; despite its earlier wrongful behavior, the union refused to seek full benefits for Reilly upon his reinstatement; and union membership and payment of dues under the collective bargaining agreement was required as a condition of employment. We hold that the union, by excluding Reilly from full union membership, was in breach of its duty of fair representation in administering § 101C, the discharge provision of the collective bargaining agreement. In wielding the power of obtaining a discharge for failure to pay dues, the union had a duty to exercise that power fairly. See *Breininger* v. *Sheet Metal Wkrs. Intl. Assn. Local Union No. 6,* 493 U.S. at 82-83. This it has not done. Accordingly, the argument that Reilly lacks standing to challenge the award has no merit. See the cases previously cited discussing the duty of fair representation.

We need not consider whether the arbitrator's decision also superseded the prior court order. It is enough that the union's bad faith actions in representing Reilly led to the arbitration decision and Reilly's wrongful discharge.

5. *Remedy against the Authority.* Since Reilly was wrongfully discharged, the order requiring the Authority to reinstate him was clearly appropriate. The assessment against the Authority of back pay from the time of the "tainted decision" of the arbitrator to the date of the judicial determination that the discharge was wrongful, however, presents difficulty. "If an employer relies in good faith on a favorable

arbitral decision, then his failure to reinstate discharged employees cannot be anything but rightful, until there is a contrary determination. . . . To hold an employer liable for back wages for the period during which he rightfully refuses to hire discharged employees would be to charge him with a contractual violation on the basis of conduct precisely in accord with the dictates of the collective agreement." *Hines* v. *Anchor Motor Freight, Inc.*, 424 U.S. at 572-573 (Stewart, J., concurring). For the reasons set forth by Justice Stewart in the *Hines* case, and implicitly by the Court in *Bowen* v. *United States Postal Serv.*, 459 U.S. 212, 225-228 (1983), we vacate that portion of the judgment which assessed the Authority with an award of back pay for the period prior to the judgment of the Superior Court.

6. *Remedy against the union.* The concurring opinion of Justice Stewart in *Hines* v. *Anchor Motor Freight, Inc.*, *supra*, also sets forth the appropriate remedy against the union. "Liability for the intervening wage loss must fall not on the employer but on the union. Such an apportionment of damages is mandated by *Vaca's*[8] holding that 'damages attributable solely to the employer's breach of contract should not be charged to the union, but increases if any in those damages caused by the union's refusal to process the grievance should not be charged to the employer.' 386 U.S. at 197-198." 424 U.S. at 573. We again agree with Justice Stewart's reasoning, see also *Bowen* v. *United States Postal Serv.*, 459 U.S. at 223, and hold that the union is responsible for Reilly's back pay from the time of the arbitrator's decision to the date the judgment was entered in the Superior Court.

The trial judge explained in his memorandum that, because the international union was not a party, see *Donahue* v. *Kenney*, 327 Mass. at 413, and because the union cannot unilaterally contravene a rule in the international union's constitution, *McDermott* v. *Jamula*, 338 Mass. 236, 245

---

[8]*Vaca* v. *Sipes*, 386 U.S. 171 (1967).

(1958), cert. denied, 359 U.S. 968 (1959),[9] he could not order the union to reinstate Reilly. He ordered the union to "refrain from any further action against [Reilly] based on the fact that he is not, as yet, a dues-paying member." In this form, the judgment would appear to allow Reilly to retain his employment even if the union offered him full reinstatement and he refused to pay his dues. Since this is not consistent with the memorandum of the trial judge or our reasoning, the order is hereby modified so as to order the union to refrain from any further action against Reilly until he is given the opportunity of full membership and benefits upon the payment of all back dues.

The matter is remanded to the Superior Court for the modification of the judgment as herein provided, and, as so modified, the judgment is affirmed.

*So ordered.*

---

[9]Reilly seeks an order requiring reinstatement to full union membership. Even if such an order were appropriate, Reilly, not having appealed, is not entitled to a revision in his favor. *Adoption of Alex,* 408 Mass. 522, 525 (1990).