**John BEST, Plaintiff,**

v.

**David ROME, et al., Defendants.**

**Civ. A. No. 93–11327–JLT.**

United States District Court,
D. Massachusetts.

June 21, 1994.

---

Valeriano Diviacchi, Diviacchi Law Office, Boston, MA, for plaintiff.

John F. McMahon, Angoff, Goldman, Manning, Pyle, Wanger & Hiatt, P.C., Boston, MA, for defendants.

*MEMORANDUM*

TAURO, Chief Judge.

## I.

### Background

Plaintiff John Best worked as a provisional civilian employee of the Boston Police Department from June 10, 1987, until his termination on January 2, 1990. His position was covered under the terms of a collective bargaining agreement between the City of Boston and Local 285 of the Service Employees International Union ("Local 285").

On January 17, 1990, Local 285 filed a grievance protesting plaintiff's termination. A union representative, Robert Benson, met with city officials to discuss plaintiff's claims. When that meeting did not lead to a settlement of the claims, Local 285 submitted the claim to arbitration. Outside counsel, defendants David Rome, and Rome's firm, Angoff, Goldman, Manning, Pyle, Wanger & Hiatt (the "Angoff firm"), represented Local 285 during the arbitration.

On September 3, 1992, the Arbitrator found that plaintiff had been "laid off" within the relevant term of the labor agreement and was entitled to recall rights. But the arbitrator also concluded that plaintiff waived those recall rights when he failed to apply for vacant positions that were available following his removal.[1]

---

1. The arbitrator issued the decision on September 3, 1992, stating in relevant part:

Plaintiff now sues defendants Rome and the Angoff firm, alleging that defendants committed legal malpractice when Rome failed to call Boston City Councillor Albert O'Neil as a supporting witness. According to plaintiff, O'Neil was "ready, willing, and able at the time of the arbitration hearing to testify" with respect to plaintiff's alleged waiver of his recall rights. Compl. ¶ 7. Best has asserted claims for breach of fiduciary duty (Count I), attorney malpractice (Count II), intentional infliction of emotional distress (Count III), and violations of Mass.Gen.L. ch. 93A (Count IV).

Presently before the court is defendants' motion for summary judgment.[2]

## II.

### *Analysis*

#### A. *Motion for Summary Judgment*

In support of their motion for summary judgment, defendants argue that: (1) union counsel is immune from suit for conduct performed on behalf of the union in the collective bargaining process; (2) there is no basis for asserting that an attorney-client relationship existed between Best and defendants; and (3) even if such a relationship existed, defendants' conduct was not negligent. The court addresses these arguments below.

*Actions by Union Grievants against Union Lawyers*

■ It is well established under federal law that unions and union officials have

> The grievance is substantively arbitrable.
>
> The grievant, John Best, was laid off as that term is defined in Article 13, section 2(b) of the Agreement. Since he never applied for the Principal Storekeeper positions, which were filled in May, 1990, or otherwise notified the Boston Police Department of his interest in recall, Mr. Best waived his recall rights under Article 13, Section 7, of the Agreement.
>
> The grievance is denied as a result.

Defs.' Mem.Supp.Mot.Summ.J. at 3 (citing Statement at ¶ 4).

2. This court has diversity jurisdiction over the case pursuant to 28 U.S.C. § 1332. Plaintiff is a resident of New Hampshire, and defendants are both citizens of Massachusetts. The amount in controversy exceeds $50,000.

3. It is well established that a grievance hearing is part of the collective bargaining process. *Breda v. Scott,* 1 F.3d 908 (9th Cir.1993).

broad discretion to act in what they perceive to be their members' best interests. *DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 164 n. 14, 103 S.Ct. 2281, 2290–91 n. 14, 76 L.Ed.2d 476 (1983) (citing *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967)). In *Atkinson v. Sinclair Refining Co.,* 370 U.S. 238, 247–49, 82 S.Ct. 1318, 1324–25, 8 L.Ed.2d 462 (1962), the Supreme Court explained that Congress sought to prevent union grievants from evading its policy of holding unions solely responsible for injuries inflicted by the union or the union's agents. Consequently, Congress specifically provided in § 301(b) of the Taft–Hartley Act that union agents cannot be held personally liable to third parties for conduct undertaken on behalf of the union during the collective bargaining process. *Id.* at 248–49, 82 S.Ct. at 1324–25 (citing 29 U.S.C. § 185(b)).

■ The First Circuit has expanded this rule to hold that former public employees cannot maintain state malpractice or tort claims against lawyers who act as representatives of a union in the collective bargaining process. *Montplaisir v. Leighton,* 875 F.2d 1, 5 (1st Cir.1989).[3] In *Montplaisir,* the First Circuit found that when outside counsel performs a function in the collective bargaining process that would otherwise be assumed by the union's business agents or representatives, the attorney serves as the union's agent, and the principles articulated in *Atkinson* should extend to immunize counsel's conduct. *Id.* at 7.[4]

4. *Id.* The First Circuit further noted that several policy considerations militate toward extending immunity to outside counsel, namely that "permitting malpractice suits whenever a union's legal strategies fail" would impede the expedient processing and determination of labor disputes. *Id.* at 6. For example, legal malpractice actions are subject to a three-year statute of limitations. In contrast, under federal labor law, actions against the union must be brought within six months.

In addition, different standards of proof are applied in malpractice actions and unfair representation actions. In a legal malpractice action, a litigant need only show negligence. *Id.* But in a suit against a union, the claimant must establish that the union violated the duty of fair representation and acted in an arbitrary, discriminatory, or bad faith manner. Union negligence does not constitute a breach of a union's duty of fair

Plaintiff argues, however, that federal cases, such as *Montplaisir*, are inapplicable because this case involves state law, and not § 301(b) of the Taft Hartley Act or federal law principles.[5]

In contrast to federal law, the relevant state statute, the Massachusetts Labor Relations Act, Mass.Gen.L. ch. 150E, does not expressly provide that union officials are immune from liability for conduct undertaken on behalf of union members.[6] In addition, this court has been unable to locate any Massachusetts cases addressing this issue. This appears to a novel question of Massachusetts law.

■ While ch. 150E does not expressly immunize the conduct of union agents, the statute does provide that unions are subject to the duty of fair representation to ensure that unions have broad discretion in handling claims that arise during the collective bargaining process. *McCormick v. Labor Rel. Comm'n*, 412 Mass. 164, 588 N.E.2d 1 n. 5. (1992); *Leahy v. Local 1526, AFSCME*, 399 Mass. 341, 504 N.E.2d 602 (1987); *Pattison v. Labor Rel. Comm'n.*, 30 Mass.App.Ct. 9, 565 N.E.2d 801 (1991); *Reilly v. Local 589, Amalgamated Transit Union*, 22 Mass.App. Ct. 558, 495 N.E.2d 856 (1986). Using federal precedent as an aid, state courts have construed the duty of fair representation under ch. 150E to find that unions may be held liable to union members only if the union's conduct is discriminatory, and there is substantial evidence of bad faith that is inten-

tional, severe and unrelated to legitimate union objectives. *Graham v. Quincy Food Serv. Emp. Ass'n*, 407 Mass. 601, 555 N.E.2d 543, 547 (1990) (internal citations omitted).[7]

■ This court concludes that a rule imposing personal liability on union agents for conduct undertaken on behalf of the union would interfere with the legislative goal of permitting unions wide latitude to act for the collective good of all employees. Such a rule would subject union agents to liability under a negligence standard for conduct for which the union itself would not be liable under the duty of fair representation. *Peterson*, 771 F.2d at 1259. As a consequence, union agents' decisions might well be affected by a fear of incurring personal liability, and this fear would, in turn, restrict the union's ability to act on behalf of its members.

In light of these significant policy concerns and the statute's express provision limiting union liability, this court concludes that, by negative implication, the state legislature did not intend to extend liability for the conduct of grievance disputes to union agents. Union agents, therefore, may not be sued for conduct undertaken on behalf of the union, in the absence of a specific statutory provision or state court decision instructing otherwise.

■ This court also concludes that the First Circuit's holding in *Montplaisir*, extending the *Atkinson* rule to outside counsel, should be applied here. As the First Circuit observed, an outside attorney acts on behalf

---

representation. *Id.; Peterson v. Kennedy*, 771 F.2d 1244, 1253 (9th Cir.1985).

5. Claims involving state or municipal employees are specifically excluded from coverage under the National Labor Relations Act, 29 U.S.C. § 152(2).

6. The statute provides:

> The exclusive representative shall have the right to act for and negotiate agreements covering all employees in the unit and shall be responsible for representing the interest of all such employees without discrimination and without regard to employee organization membership.
> An employee may present a grievance to his employer and have such grievance heard without intervention by the exclusive representative of the employee organization representing said

employee, provided that the exclusive representative is afforded the opportunity to be present at such conference and that any adjustment made shall not be inconsistent with the terms of an agreement then in effect between the employer and the exclusive representative. Mass.Gen.L. ch. 150E, § 5.

7. At least one state court has noted that the states courts generally follow federal precedent when interpreting the duty of fair representation:

> [t]he Massachusetts courts have recognized that similar considerations and principles apply in labor cases arising under the closely comparable Federal statutes and Massachusetts statutes regulating collective bargaining, labor disputes, and labor policy. Federal precedents have been used where reasonably applicable to situations arising under Massachusetts regulatory statutes.
> *Reilly*, 495 N.E.2d at 868.

of the union and should be viewed as the union's agent. A contrary finding might subject an attorney to liability "for essentially political and strategic decisions of the union" and cause the union's legal costs to increase. *Breda*, 1 F.3d at 909. This court concludes, therefore, that to the extent that defendants acted on behalf of the union during the collective bargaining process, they are immune from liability.

### Existence of an Implied Attorney–Client Relationship

Although defendants cannot be held liable for conduct undertaken on behalf of the union, plaintiff also argues that defendants represented him personally during the arbitration. He specifically argues that defendant Rome represented him as part of an implied attorney-client relationship between the parties.

■ Under state law, an implied attorney-client relationship arises whenever: (1) a person seeks the advice of an attorney; (2) the advice is within counsel's competence; and (3) the attorney expressly or implicitly agrees to render assistance. The third element may be established by proof of reliance when the person seeking legal assistance reasonably relies upon the attorney, and the attorney is aware of this reliance but does nothing to negate that reliance. *De Vaux v. American Home Assurance Co.*, 387 Mass. 814, 444 N.E.2d 355, 357 (1983).

Plaintiff argues that he relied upon defendants' advice and, because defendants never advised him to seek independent counsel, an implied attorney-client relationship was created. He also suggests that an authorization he signed in 1988, which gave the defendant firm the right to represent him in an unrelated wage dispute, provides the requisite proof of an attorney-client relationship between the parties.[8]

---

8. Plaintiff notes that an attorney has a duty to reveal relevant facts to nonclients whom the attorney knows will rely on the services rendered. *Page v. Frazier*, 388 Mass. 55, 445 N.E.2d 148, 154 (1983). But defendants argue that no information, including the results of the interview of O'Neil, was ever withheld from plaintiff, and plaintiff never asserts otherwise.

■ The court finds, however, that the plaintiff's written authorization, which permitted the Angoff firm to represent him in the 1988 wage dispute, did not create an attorney-client relationship for the arbitration claim.[9] Here, the 1988 authorization clearly extended only to the "overtime claims under the Fair Labor Standards Act." The authorization does not suggest in any way that the Angoff firm would continue to represent plaintiff in any additional labor, or nonlabor, disputes.

■ Under Massachusetts law, it is not sufficient in a malpractice action merely to prove that an attorney-client relationship existed with respect to some matters. The relationship must have existed with respect to the act or omission on which the malpractice action is based. *Page*, 445 N.E.2d at 152 n. 10. This court determines, therefore, that no reasonable factfinder could conclude that the 1988 authorization created a reasonable expectation of an ongoing attorney-client relationship between the parties, extending to the termination claim at issue here.

■ Furthermore, plaintiff has not introduced any evidence of independent contacts with the Angoff firm or defendant Rome, or proof of an oral or written contract indicating that he had procured defendants' services for the grievance action. It is well established that although a union attorney may have some ethical obligations to a grievant, the attorney's principal client is the union, which has retained the attorney, pays for any legal services, and is often the party to the arbitration proceedings. *Peterson v. Kennedy*, 771 F.2d at 1258; *see also Adamo v. Hotel, Motel, Bartenders, Cooks & Restaurant Workers*, 655 F.Supp. 1129 (E.D.Mich. 1987) ("In a labor dispute ... it is the union which carries on the dispute.... [t]he member's rights must be exercised through the union[,] and it is the union which is the client of the law firm.")

---

9. Moreover, in his deposition on December 20, 1993, plaintiff testified that he did not know if he had been a plaintiff in the earlier wage dispute, and had no specific recollection concerning the action. Defs.' Reply Brief at 9 n. 2 (citing Best Deposition Transcript at 40–41).

Defendants have introduced substantial evidence establishing that plaintiff should have known that defendants represented only the union. First, plaintiff did not have direct contacts with anyone at the Angoff firm. Plaintiff, instead, was instructed to go through the union when he needed to contact the Angoff firm. The union further represents, and plaintiff does not contest, that union agents informed plaintiff that only Local 285 could invoke arbitration, and the Angoff firm would present the arbitration solely on behalf of the union. Local 285 also paid all of defendants' fees, and union officials attended all meetings with plaintiff and defendants.

Furthermore, plaintiff did not complain about the defendants' representation during the grievance hearing prior to the award. After the arbitrator made the award and Local 285 refused to appeal, plaintiff then complained to the union about Rome's performance.

This court concludes, therefore, that plaintiff has not proffered sufficient evidence to raise a question of fact as to whether he had an attorney-client relationship with defendants during the arbitration proceedings.

### Legal Malpractice Claim

The court has found above that plaintiff cannot properly sue the agents of the union and that there was no implied attorney-client relationship between the parties. Recognizing that the former represents a determination of a novel state law issue, the court also considers defendants' argument that, even if an attorney-client relationship existed between the parties, plaintiff has not raised a question of material fact as to whether defendants engaged in attorney malpractice.

■■■ In general, attorneys owe their clients an obligation to exercise a reasonable degree of care and skill in the performance of legal duties. *Glidden v. Terranova,* 12 Mass.App.Ct. 597, 427 N.E.2d 1169, 1170 (1981). To establish a legal malpractice claim, a plaintiff must prove that, but for the attorney's negligence, the plaintiff probably would have succeeded in the underlying litigation. *Id.* 427 N.E.2d at 1171; *Jernigan v. Giard, Jr.,* 398 Mass. 721, 500 N.E.2d 806, 807 (1986). In other words, a former client may prevail in an action against the attorney only if the client establishes that the attorney's negligence "made a difference to the client." *Jernigan,* 500 N.E.2d at 807.

■■■ Plaintiff's claims all rest upon his assertion that defendants committed negligence when Rome failed to call O'Neil to testify regarding plaintiff's efforts to be recalled. But defendants have submitted an affidavit by Rome, in which he states that O'Neil told him that he had no memory of any efforts by plaintiff to be recalled. As a result, defendants assert that Rome acted reasonably when he decided not to call O'Neil to testify at the arbitration hearing.

■■■ Plaintiff does not dispute Rome's representation that he believed that O'Neil could not testify that plaintiff had sought to exercise his recall rights. Rather, plaintiff seeks only to have the affidavit stricken, because he alleges that the affidavit contains inadmissible hearsay.[10] But this affidavit is not offered to establish the truth of the matter asserted—that O'Neil did not, in fact, have any recollection of plaintiff's meeting to seek recall rights. Rather, it is offered and is admissible to establish Rome's state of mind prior to the grievance hearing. Because plaintiff's proffer does not raise a dispute with respect to Rome's belief as to the non-value of O'Neil's expected testimony,[11] this court concludes that there is no evidence that Rome acted negligently when he failed

---

**10.** Fed.R.Civ.P. 56(e) provides, in relevant part:

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters state therein.

*Id.*

**11.** Plaintiff simply alleges that "[d]efendants are wrong on that issue and should have further investigated the matter because Mr. O'Neil could have backed up Mr. Best's testimony." Pl.'s Mem.Opp.Mot.Summ.J. at 8. But this court will not indulge complaints which are founded on mere conclusory allegations. *See, e.g., Culebras Enterprises Corp. v. Rivera Rios,* 813 F.2d 506, 519 (1st Cir.1987).

to call O'Neil to testify at the arbitration hearing.

This court, therefore, finds that even if an attorney-client relationship existed between the parties, no reasonable trier of fact could find that defendants engaged in negligence, or that the allegedly negligent behavior affected the outcome of the arbitration proceedings.

### III.

*Conclusion*

For the foregoing reasons, defendants' motion for summary judgment will be allowed.