Donato v. McCarthy                    CV-00-039-M    07/17/01
                UNITED STATES DISTRICT COURT

                  DISTRICT OF NEW HAMPSHIRE


Sandra C. Donato,
      Plaintiff

      v.                                  Civil No. 00-39-M
                                          Opinion No. DNH 2001 129
Sheilah F. McCarthy,
      Defendant


                         **O R D E R**


      The plaintiff, Sandra Donato, is a former union member and

employee of Crown Vantage Corporation, who was fired.  She

remains bitterly disappointed by an arbitrator's award upholding

her discharge, and is particularly displeased with the effort

expended on her behalf by Sheila F. McCarthy, Esq., the attorney

who presented the case against her firing before the American

Arbitration Association.  Indeed, plaintiff attributes the

adverse decision to McCarthy's (and the union's) inadequate

representation, if not deliberate hostility.[1]  Accordingly,

_____

      [1]  To be fair, McCarthy strenuously denies the charge, and,
in all candor, a review of the voluminous pleadings and materials
filed by the parties, including a transcript of the arbitration
proceeding, reveals a fairly typical labor arbitration defense –
not perfect or extended, but abbreviated and to the point.  No
doubt more could have been done, but it is not at all clear that
more would have made a difference in the outcome.

Donato brought suit against her union, its Local 75, and McCarthy. Her claims against the named union defendants were dismissed by Chief Judge Barbadoro on preemption grounds (Donato v. McCarthy, et al., Civil No. 99-344-B), and the case was remanded to state court, whereupon McCarthy again removed the remaining claims on diversity grounds. As the matter currently stands, Donato is asserting five claims against McCarthy: I - Legal Malpractice; II - Intentional Malpractice; III - Intentional Infliction of Emotional Distress; IV - Negligent Nondisclosure; and V - Unfair and Deceptive Trade Practices. McCarthy, in turn, asserts two counterclaims against Donato: I - Tortious Interference with Advantageous Contractual Relations; and II - Defamation.

The fundamental difficulty with Donato's case is that McCarthy is immune from personal civil liability for activity engaged in, or services rendered by her in connection with the collective bargaining process. Based on that personal immunity, McCarthy moves for summary judgment on all counts.

The undisputed material facts establish that plaintiff was a union member, subject to a collective bargaining agreement ("CBA") between her union and her employer, the terms of which

2

defined remedies available to her (through her union) in the event of an adverse personnel action – like discharge. In this case, the employer, Crown Vantage Corporation, fired plaintiff for what it deemed just cause. Her union intervened and, under the CBA, informally grieved the matter in an effort to have her reinstated. When that failed, the union leadership decided, upon advice of counsel (McCarthy), not to take the matter to binding arbitration, although the union was entitled to do so under the CBA. However, plaintiff successfully appealed the leadership's decision not to arbitrate to the Local's membership. The membership voted to invoke arbitration with regard to Donato's firing, and the union's president thereupon directed the union's legal counsel – Attorney McCarthy – to notify Crown Vantage that the union wished to arbitrate plaintiff's discharge pursuant to the CBA. McCarthy promptly complied.

Although McCarthy had previously advised the Local that, in her professional judgment, the union should not take plaintiff's case to arbitration because success on the merits was unlikely[2], when the union membership decided to arbitrate anyway, McCarthy was directed to pursue the union's (and derivatively,

---

[2] The union and employer are required to share the costs of binding arbitration under the CBA.

3

plaintiff's) cause before the arbitrator. McCarthy undertook that task in what appears to be a rather routine fashion – communicating with union officials, who gathered and provided relevant information, gathering material herself, meeting and speaking with plaintiff at the union hall and, later, at a local motel, identifying and considering potential witnesses, and presenting the case against discharge before the assigned arbitrator, including filing a post-hearing brief.[3]

The various counts in plaintiff's complaint essentially advance the same general theme: Attorney McCarthy didn't do the job, in plaintiff's view, with the requisite degree of personal loyalty, professional competence, thoroughness, or dedication, and, she actually intended to lose the case in order to cause plaintiff harm. But McCarthy's activities, to the extent they related to presenting the union's position at arbitration, in the context of the collective bargaining process, cannot serve as a basis for holding her personally liable to plaintiff. McCarthy was hired by the union to handle the arbitration case, was paid

---

[3] Although plaintiff finds fault with McCarthy's handling a case she advised against bringing, it is hardly unusual for advocates to pursue claims they personally do not think are winnable. There is no evidence suggesting that McCarthy was so personally offended by the union's decision to disregard her assessment that her professional obligations were compromised.

by the union, advised the union, and was indisputably acting as the union's agent throughout the grievance process. Accordingly, she is immune from suit by third parties (like plaintiff) based upon that collective bargaining related activity. Atkinson v. Sinclair Refining Co., 370 U.S. 238 (1962) overruled in part on other grounds; Boys Markets, Inc. v. Retail Clerks Union, Local 770, 398 U.S. 235 (1970); Montplaisir v. Leighton, 875 F.2d 1 (1st Cir. 1989); Peterson v. Kennedy, 771 F.2d 1244 (9th Cir. 1985); Best v. Rome, 858 F.Supp. 271 (D.Mass. 1994). "This immunity obtains 'in contract or tort, or both, . . . or in a separate action for damages." Montplaisir, 875 F.2d at 4 (quoting Atkinson, 370 U.S. at 249).

Plaintiff vainly attempts to avoid McCarthy's Atkinson immunity defense by first attempting to establish an independent liability theory – one unrelated to the collective bargaining process – and then describing her causes of action in state law terms. She says, for example, that an implied, and independent, attorney-client relationship existed between her and McCarthy, separate from the union agent-union grievant relationship, sufficient to support a legal malpractice claim, not to mention one for intentional tort. But no reasonable factfinder could

5

conclude, on the proffered evidence opposing summary judgment, that an independent attorney-client relationship existed. Plaintiff's contact with McCarthy was initiated by the union; plaintiff knew McCarthy was the union's attorney; she met with McCarthy at the union hall; she did not pay McCarthy; and she does not, and cannot, claim that she privately sought out or retained McCarthy to represent her at the arbitration hearing. Plaintiff acknowledged that she knew McCarthy was acting as the union's agent when she answered interrogatories as follows: "As a member of the union I believed the union attorney was my attorney." Interrogatory Answer 9, Exhibit W, Defendant's Motion for Summary Judgment (document no. 22). That answer is both understandable and essentially correct – the union attorney was engaged in pursuing a union cause that, if successful, would be of substantial practical benefit to plaintiff as the directly affected union member – i.e. she would be reinstated. So, McCarthy was acting to benefit plaintiff, but primarily she served the union, and plaintiff only indirectly. Plaintiff obviously knew that McCarthy was acting principally as the union's attorney in pursuing the union's grievance under the CBA, and was "her attorney" only in the indirect sense that plaintiff

6

was the union member personally affected by the outcome of union's arbitration of the grievance.  <u>See e.g.</u>, Exhibit V, Defendant's Motion for Summary Judgment (document no. 22), Letter from Donato to American Arbitration Association, dated July 25, 1996, in which plaintiff writes:  "I do not want to sound like the bad guy but I have reason to believe <u>the union lawyer</u> did not represent me to the best of her ability in my behalf."  (emphasis added).

Plaintiff offers no evidence from which a factfinder could determine that McCarthy ever assumed a role other than that of union agent, or that plaintiff could reasonably have thought that McCarthy was serving in any capacity other than as the union's representative in pursuing the discharge grievance under the CBA, albeit a grievance concerning her own employment.  Plaintiff's suggestion that she believed McCarthy was acting as her own personal counsel, independently, is not objectively reasonable on this record.  <u>See</u> <u>Best v. Rome</u>, 858 F.Supp. at 276-277 ("It is well established that although a union attorney may have some ethical obligations to a grievant, the attorney's principal client is the union, which has retained the attorney, pays for any legal services, and is often the party to the arbitration

7

proceedings." (citations omitted)).  Given the undisputed facts
and circumstances, an implied attorney-client relationship
between plaintiff and McCarthy, independent of, or separate and
in addition to, McCarthy's union representation cannot be
implied.

Further discussion is unnecessary because plaintiff's claims
against McCarthy, however imaginative, fall well within the scope
of her personal immunity under Atkinson.  "With monotonous
regularity, court after court has cited Atkinson to foreclose
state-law claims, however inventively cloaked, against
individuals acting as union representatives within the ambit of
the collective bargaining process.  This principle has become so
embedded in our jurisprudence that it brooks no serious
challenge." Montplaisir, 875 F.2d at 4 (citations omitted).
Plaintiff, of course, was not without recourse if she felt ill-
used by her union or its agent – she could easily have filed a
timely denial of fair representation claim against the union.
Why she failed to do so is unclear, but it is clear that she
cannot now sue the union's agent personally on what is
essentially a denial of fair representation claim.

Since plaintiff has not proffered evidence sufficient to present a genuine issue of material fact regarding an alleged implied attorney-client relationship between her and McCarthy, and the undisputed material facts and circumstances show that McCarthy was acting as the union's agent throughout the arbitration process, McCarthy is immune from plaintiff's suit and is entitled to summary judgment as a matter of law on all counts. Accordingly, McCarthy's motion for summary judgment (document no. 22) is granted, and judgment shall be entered in defendant's favor on Counts I, II, III, IV and V of the amended complaint.[4]

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

July 17, 2001

cc:  Richard S. Nicholson, Esq.
     R. Matthew Cairns, Esq.

---

[4]  The case is not closed because there are extant counterclaims.  If defendant does not intend to pursue those claims she shall promptly advise the court, in which event the case will be closed.