Toomey, J.
INTRODUCTION
Plaintiff Raymond Brienzo filed this action against the various defendants alleging that, after he sustained a shoulder injury on May 20, 1991, while working for the Town of Acushnet as a Special/Heavy Equipment Operator, the Town improperly failed to return him to work until May of 2000. This matter is before the court on the Town defendants’ motion for summary judgment pursuant to Mass.R.Civ.P. 56 and the plaintiffs cross motion for partial summary judgment on Count III of the first amended complaint. In connection therewith, the Town has moved to strike certain affidavits filed in support of the plaintiffs opposition to summaryjudgment, and the plaintiff has responded with a motion for fees pursuant to Mass.R.Civ.P. 11. Finally, the union defendants have *143 moved for summary judgment on the amended complaint pursuant to Mass.R.Civ.P. 56.
For the reasons discussed below, the Town’s motion to strike and the plaintiffs motion for an award of fees under Rule 11 are both DENIED. The Town’s motion for summary judgment is ALLOWED in part and DENIED in part. The plaintiffs motion for partial summary judgment is DENIED. Finally, the union defendants’ motion for summary judgment is ALLOWED.
BACKGROUND General Facts
The undisputed facts as contained in the summary judgment record are as follows.[2] Plaintiff Raymond Brienzo (“Brienzo”) was first employed as an intermittent provisional employee in the Town’s Highway/Water Department from January 1977 to January 12, 1988; thereafter, he was appointed as a full time Special/Heavy Equipment Operator. In his position with the Town, Brienzo was a tenured civil service employee under General Laws Chapter 31. Brienzo is a member of the Public Employees’ Local Union 1249 of the Laborers’ International Union of North America (“the Union”) and his employment with the Town was covered by a collective bargaining agreement (“the CBA”).
Article XVII, Section 4 of the CBA, entitled “Employment Security,” provides that ”[t]he Town of Acushnet guarantees that no employee covered by this Agreement, fully employed and working at the date of execution of this Agreement, will be subject to layoff within the duration of this Agreement.” Additionally, Article XVIII of the CBA, entitled “Grievance Procedure,” provides:
A grievance which in the opinion of the employee is a violation of this Agreement shall be settled in the following manner:
Step 1. The Union Steward and/or Representative, with or without the aggrieved member or employee, shall take up the grievance or dispute in writing with the employee’s immediate supervisor within five (5) working days.
Step 2. If the grievance has not been settled, it shall be presented in writing to the Highway or Water Superintendent within five (5) working days after the supervisor’s response is due. The Highway or Water Superintendent shall respond to the Steward in writing within five (5) days.
Step 3. If the grievance still remains unadjusted, it shall be presented to the Board of Selectmen in writing within five (5) working days after the response of the Highway or Water Superintendent is due. The Board of Selectmen shall respond in writing within five (5) working days.
Step 4. If the grievance is still unsettled, either party may, within ten (10) days after the reply of the Board of Selectmen is due, by written notice to the other, request arbitration.
The Injury and Its Initial Aftermath
On May 20, 1991, Brienzo injured his left shoulder while putting a wheelbarrow into a truck at work. Brienzo was deemed to be totally disabled and, beginning on May 20, 1991, collected weekly disability compensation under G.L.c. 152. In December of 1993, the Town filed a request with the Bristol County Retirement Board to have Brienzo involuntarily placed on disability retirement, but did not pursue its request. In 1995, the Town’s insurance company’s independent medical examiner examined Brienzo and determined that he could return to work with certain medical restrictions, including that he not lift his left arm above the shoulder or lift more than ten pounds. Brienzo’s own physician, Dr. Addleberg, gave him a medical release on March 13, 1995; the release carried the restriction that Brienzo could not work over the height of his injured shoulder doing heavy lifting or repetitive work. Thereafter, the Department of Industrial Accidents changed Brienzo’s status from totally to partially disabled, and Brienzo continued to receive weekly disability payments, although only for a partial disability.
Brienzo presented Addleberg’s medical release to the Board of Selectmen on March 15, 1995. Brienzo did not request “light duty”; rather, he asked to be returned to his former position. The Board believed, based on the stated medical restrictions, that Brienzo could not perform the essential functions of that former position, with or without an accommodation, because he could not lift over ten pounds. On March 27, 1995, the Board of Selectmen received a letter from Raymond Barlow (“Barlow”), the Working Foreman of the General Highway Department, asserting that there was no “light duty” work available for Brienzo. Brienzo also received a copy of Barlow’s letter. Brienzo disputed the view that he could not satisfy the demands of his former position and concluded that he was harmed by the Town’s refusal to return him to work in March of 1995. Neither the Town nor the Union ever informed Brienzo that he had a right to an accommodation for his injury, nor was there a notice of employee rights posted in the workplace as required by G.L.c. 15 IB, §7.
In July of 1996, the Board of Selectmen approved a lump sum settlement of Brienzo’s workers’ compensation rights, but Brienzo refused to accept the settlement, stating that he wanted to return to work. Around this time, the Town informed Brienzo that he was required to pay 100% of his COBRA medical insurance premium.
The Effort to Return to Work
Brienzo received physical therapy intermittently from April of 1995 until April of 1998. On April 22, 1998, Brienzo was again examined by the insurer’s *144 independent medical examiner, who determined that he was then able to return to work without any restrictions. The Board of Selectmen told Brienzo that he should report to the recently created Board of Public Works and speak to its Chairman Matthew Goulet (“Goulet”). Brienzo spoke to Goulet at Goulet’s home; Barlow, the Highway Department’s Foreman, was also present. Goulet stated that he wanted Brienzo to return to work. Barlow cautioned Goulet that he had better check with the Union because Barlow was unsure how Brienzo’s return “would fly” with the Union.
On May 18, 1998, Brienzo met with the Board of Public Works. Although Goulet and the Board wanted Brienzo to return to work, the Union objected because his return would result in another union member’s being laid off. The Board deferred action upon the placement of Brienzo because it needed time to research how to reinstate him in a manner compliant with all applicable laws and the CBA.[3] Although the Board, in anticipation of returning Brienzo to work, had drafted a letter directing the lay-off of the least senior employee, the letter was never signed by the Board of Public Works or delivered to that employee, and no layoff occurred.
The Union’s Action
According to Anton Medeiros, a member of the Sewer and Water Department, a Union meeting of the members of the Public Works Department occurred on June 15, 1998 at the Town Barn. Paul Fortin (“Fortin”), the Union steward, ran the meeting and instructed the members to vote by secret ballot on the question of whether or not to bring back a man who was out on workers’ compensation. Thereafter, Goulet told Brienzo that the Town would not return him to work and lay off a union member with less seniority.
Fortin’s memory of the gathering differed from that of Medeiros. Fortin recalled that he simply asked Barlow if he could have five minutes in the break room with the other ten members of the unit before they punched out. Fortin then advised the ten that, if they wanted the Union to seek to eliminate the CBA clause preventing layoffs, the Union would commence negotiations. The ten members responded that they were not in favor of changing the CBA in that respect. According to Fortin, the discussion was neither an official nor an unofficial Union meeting. The issues of Brienzo’s employment and the possible alteration of the CBA were never presented to or reviewed by the full membership of Local 1249 during any official Union meeting. The ten Public Works employees received warning slips in their files concerning an illegal Union meeting, but they filed a grievance over the warning slips and the Board of Selectmen voted on August 10 to remove the warning slips from the employees’ files.
The Return to Work
On June 19, 1998, the Board of Selectmen requested that town counsel give Goulet a legal opinion on Brienzo’s reinstatement. Counsel responded, on July 8, 1998, that, under G.L.c. 152, §75A, Brienzo was entitled to a preference in hiring for the next available job and that, upon his return to work, his seniority should be calculated, pursuant to G.L.c. 31, §33, as uninterrupted from his original date of employment. On July 14, 1998, Goulet sent Brienzo a letter which stated in relevant part:
Please be advised that the Board of Public Works voted unanimously at a previous meeting to return you to your pervious [sic] classification as a Heavy Duty Machine Operator . . . On July 8, 1998 we received a ruling from our Legal Staff informing us that you cannot return to work until a suitable job becomes available. At this time you will be placed on the “Preference in Hiring” list. In the event that there is a job opening available you will be the first one called.
On September 8, 1998, Brienzo filed a complaint with the Massachusetts Commission Against Discrimination (“MCAD”) alleging that the Town discriminated against him on the basis of handicap by denying him reinstatement after his extended workers’ compensation leave. Also in September of 1998, Goulet contacted Brienzo about potential part-time work in the Water Department, but Brienzo did not respond to this opportunity.
On April 12, 2000, the Town offered to Brienzo, effective April 28, 2000, a full-time position which had become available when an employee of the Department of Public Works retired. Brienzo accepted the offer and, in May of 2000, Brienzo returned to work as a Special/Heavy Equipment Operator. At this writing, he remains a full-time employee of the Public Works Department. Brienzo never filed any grievances with the Union concerning the Town’s failure to return him to work before May of 2000. Prior to his return to work, Brienzo was never discharged, removed from office, suspended, laid off or transferred from his position by the Town in accordance with the provisions of G.L.c. 31, §41.
The Dispute with the Union
On June 5,2000, Brienzo attended a Union meeting concerning the status of negotiations upon a new collective bargaining agreement for the Department of Public Works. Union President Ted Scripsack (“Scripsack”) told Brienzo that he should drop his MCAD complaint against the Town. When Brienzo refused, Scripsack ejected him from the meeting. When Brienzo filed a request for vacation time in June of 2000, the Union refused to help him file a grievance.[4] On June 27, 2000, Brienzo’s MCAD complaint regarding the Town’s refusal to return him to work was dismissed with a finding of no probable cause and, on *145 appeal, the MCAD affirmed the hearing officer’s lack of probable cause determination.
DISCUSSION
Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). Where the moving party will not have the burden of proof at trial, he or she may satisfy the Rule 56 burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Employing those principles, we shall treat in turn each of the motions at bar.
I. Town’s Motion for Summary Judgment
The defendants Town, Board of Public Works, and Goulet (collectively, “the Town”), move for summary judgment on Counts I, II, III and VI of the amended complaint. Plaintiff Brienzo, seeking a declaratory judgment, has cross-moved for partial summary judgment on Count III.
A. Count I: Brienzo’s Claim of Breach of Contract
Count I of the amended complaint alleges that the Town breached the CBA “when it refused to take [Brienzo] back to work, because such conduct was in fact a lay off.” The Town contends that it is entitled to judgment as a matter of law on this claim because Brienzo failed to exhaust the grievance procedures mandated by the CBA. Where a collective bargaining agreement provides grievance procedures, the remedies specified therein must be exhausted before an employee can resort to the courts. O'Brien v. New England Tel. & Tel. Co., 422 Mass. 686, 695 (1996); Johnston v. School Committee of Watertown, 404 Mass. 23, 25 (1989); Azzi v. Western Elec. Co., 19 Mass.App.Ct. 406, 408, rev. den., 394 Mass. 1103 (1985). An exception to the requirement of exhaustion exists when the employee demonstrates that the union has failed in its duty to represent him fairly. Johnston v. School Committee of Watertown, 404 Mass. at 25; Azzi v. Western Elec. Co., 19 Mass.App.Ct. at 409.
In reliance on that exception, Brienzo argues that his breach of contract claim survives summary judgment because Count IV of the amended complaint alleges breach of the duty of fair representation by the
Union. That argument fails, however, because G.L.c. 150E creates a scheme in which the Labor Relations Commission is granted broad powers to resolve labor disputes including those concerning the duty of fair representation. Johnston v. School Committee of Watertown, 404 Mass. at 26; Leahy v. Local 1526, American Federation of State, County & Municipal Employees, 399 Mass. 341, 349 (1987). Where an employee alleges breach of the union’s duty of fair representation, the court should not exercise jurisdiction over either a breach of contract claim against the employer or the fair representation claim against the union until the Labor Relations Commission has had the opportunity, provided by G.L.c. 150E, to apply its expertise to resolve any genuine issues of material fact bearing on such claims. Johnston v. School Committee of Watertown, 404 Mass. at 26-27; Leahy v. Local 1526, American Federation of State, County & Municipal Employees, 399 Mass. at 350. It is undisputed that Brienzo never filed a complaint with the Labor Relations Commission concerning the Union’s alleged breach of its duty to represent him fairly in connection with the Town’s refusal to return him to work. Accordingly, Brienzo can find little comfort in his Count IV for his effort to keep Count I alive.
Brienzo also argues that he was not required to exhaust the grievance procedures in the CBA because he has independent statutory rights under G.L.c. 15 IB, the Massachusetts anti-discrimination statute. However, the cases he cites in support of the argument are inapposite. In Blanchette v. School Committee of Westwood, 427 Mass. 176, 182 (1998), the court held that an employee was not barred, by reason of the fact that she had already proceeded to arbitration under a collective bargaining agreement containing a non-discrimination clause, from pursuing a statutory discrimination claim under Chapter 15 IB because Chapter 15 IB gave her individual rights beyond those provided by the agreement and the arbitration agreement limited arbitration to interpretation and application of the agreement. See also Carr v. Transgas, Inc., 35 Mass.App.Ct. 581, 584(1993), rev. den., 416 Mass. 1111 (1994) (employee’s prior arbitration of termination did not preclude statutory claim for handicap discrimination where collective bargaining agreement did not proscribe such discrimination). Although the CBA does not mention handicap discrimination and cannot preclude a statutory claim under Chapter 15 IB, the handicap discrimination omission in the CBA is of no consequence to Brienzo’s breach of contract claim, which is based instead on an alleged violation of Article XVII, Section 4 of the CBA, guaranteeing employment security and prohibiting lay offs. Brienzo was required to avail himself of the contractual grievance procedures with respect to such a claim and his failure to do so precludes him from resort to this court. See O’Brien v. New England Tel. & Tel. Co., 422 Mass. at 695; Johnston v. School Committee of Watertown, 404 Mass. at 25; Azzi v. Western Elec. Co., *146 19 Mass.App.Ct. at 408. Thus, the Town is entitled to judgment as a matter of law on Count I of the amended complaint.
B. Count II: Brienzo’s Claim of Violation of G.L.c. 152, §75B
Count II of the amended complaint alleges that the Town, in retaliation for his refusal to lump sum his workers’ compensation claim, violated Chapter 152, Section 75B by asserting that there was no light duty work available and refusing to reinstate Brienzo at work. The Town moves for summary judgment on the ground that Brienzo has no reasonable expectation of demonstrating retaliation at trial.
The statute provides, in relevant part, that:
No employer or duly authorized agent of an employer shall discharge, refuse to hire or in any other manner discriminate against an employee because the employee has exercised a right afforded by this chapter . . .
G.L.c. 152, §75B. This legislation prohibits retaliation against an employee based on workers’ compensation rights. To prove retaliation, the plaintiff must demonstrate that, but for his protected activity, the adverse employment action would not have occurred. MacCormack v. Boston Edison Co., 423 Mass. 652, 662 (1996). The plaintiff must show a causal link between the protected activity and the adverse employment action, and the mere fact that one event followed, in time, another is not, without more, sufficient to establish causation. MacCormack v. Boston Edison Co., 423 Mass. at 662 n. 11 (applying retaliation provision of Chapter 15IB); Prader v. Leading Edge Products, Inc., 39 Mass.App.Ct. 616, 617 (1996) (applying retaliation provision of Fair Labor Standards Act, 29 U.S.C. §215(a)(3)). To support a claim of retaliation, the plaintiff must provide more proof than temporal sequence and may, in the effort, introduce such circumstantial evidence as a general practice or policy of retaliation by the employer. MacCormack v. Boston Edison Co., 423 Mass. at 664.
Brienzo filed his workers’ compensation claim in 1991 and the Town informed him that there was no light duty work when he sought reinstatement in 1995. Brienzo rejected the Town’s lump sum settlement attempt in 1996 and was not reinstated following the Board of Public Works vote in 1998. That chronology demonstrates the passage of several years between the protected activity in 1991 and 1996 and the alleged adverse employment action in 1995 and 1998, intervals which are not sufficiently linked in time to be probative of a retaliatory intent. Moreover, Brienzo has not identified any other evidence in the summary judgment record which tends to prove that the Town’s actions were motivated by a desire to retaliate. Cf. Downs v. MBTA, 13 F.Sup.2d 130, 142 (D.Mass. 1998) (concluding that a claim of discharge in violation of G.L.c. 152, §75B survived summary judgment where there was evidence that the employer viewed past workers’ compensation claims as predictive of future injuries and claims). Because Brienzo has no reasonable expectation of demonstrating a causal connection between his exercise of his workers’ compensation rights and the alleged adverse employment action by the Town, the Town is entitled to judgment as a matter of law on Count II of the amended complaint alleging that it retaliated against Brienzo in violation of G.L.c. 152, §75B.
C. Count III: Brienzo’s Claim for Declaratory Judgment
Count III of the amended complaint seeks a declaration of the rights and duties of the parties with respect to several different matters, to wit, whether the Town breached the CBA by laying off Brienzo; whether the Town could replace Brienzo without complying generally with the requirements of the civil service laws, G.L.chapter 31; whether Brienzo was a “person who has lost his job as a result of an injury compensable under this chapter” pursuant to G.L.c. 152, §75A; and whether the time during which Brienzo collected workers’ compensation benefits under G.L.c. 152 was creditable time for purposes of retirement. The Town moves for summary judgment on the ground that declaratory relief is barred by Brienzo’s failure to exhaust administrative remedies. Brienzo has cross-moved for partial summary judgment on the issue of whether the Town erroneously applied to him the rehiring preference of G.L.c. 152, §75A.
With respect to whether the Town breached the CBA, Brienzo’s failure to exhaust the grievance procedures in the CBA bars any attempt to seek declaratory relief from this court. As discussed supra, where a collective bargaining agreement provides grievance procedures, the remedies specified therein must be exhausted before an employee can resort to the courts. O’Brien v. New England Tel. & Tel. Co., 422 Mass. at 695; Johnston v. School Committee of Watertown, 404 Mass. at 25; Azzi v. Western Elec. Co., 19 Mass.App.Ct. at 408. The Town is thus entitled to judgment as a matter of law on the breach of contract aspect of Count III of the amended complaint.
The Town next contends that declaratory relief on the other issues posed by Count III is barred by Brienzo’s failure to exhaust his administrative remedies for the Town’s alleged civil service violations under G.L.c. 31, §§41 and 42. The contention has partial merit.
It is well established that, where the Legislature has established a comprehensive scheme of administrative procedures and remedies, a plaintiff must exhaust those remedies before seeking redress in court. Lincoln v. Personnel Administrator of the Dept. of Personnel Administration, 432 Mass. 208, 212 (2000); Brouillette v. Worcester, 364 Mass. 833, 834 (1974); Rafferty v. Commissioner of Pub. Welfare, 20 Mass.App.Ct. 718, 725, rev. den., 396 Mass. 1103 (1985). Such a scheme is at play in the instant dispute.
*147 G.L.c. 31, §41 provides in relevant part:
Except for just cause and except in accordance with the provisions of this paragraph, a tenured employee shall not be discharged, removed, suspended for a period of more than five days, laid off, transferred from his position without his written consent if he has served as a tenured employee since prior to October fourteen, nineteen hundred and sixty-eight, lowered in rank or compensation without his written consent, nor his position be abolished.
And, G.L.c. 31, §42 plainly provides for a hearing in front of the Civil Service Commission for an alleged violation of §41. See G.L.c. 31, §42. Brienzo suggests that §§41 and 42 are inapplicable to him insofar as the Town's wrongful refusal to return him to his former position and fire someone else is not a “discharge,” which is defined as “the permanent, involuntary separation of a person from civil service employment by the appointing authority." See G.L.c. 31,'§1. Nor is such action by the Town a “removal” or “suspension” as those terms are commonly understood. Brienzo, therefore, has succeeded in distancing his circumstances from the reach of §41 and his failure to exhaust “discharge,” “suspension" or “removal” is not fatal to his Count III.
Nonetheless, this court does conclude that the Town’s failure to return Brienzo to work because it did not have any available or light duty employment or an open full-time position constituted a §41 “lay off." That term is defined as “a temporary discontinuance of employment for lack of work or money,” G.L.c. 31, §1, and appropriately describes Brienzo’s employment situation.[5] Accordingly G.L.c. 31, §42 required Brienzo to raise any claim that the Town improperly replaced him or laid him off with the Civil Service Commission prior to seeking judicial relief. Brienzo’s failure to exhaust that administrative remedy for lay-off bars his present attempt to seek declaratory judgment from this court. See Lincoln v. Personnel Administrator of the Dept. of Personnel Administration, 432 Mass. at 212; Brouillette v. Worcester, 364 Mass. at 834; Rafferty v. Commissioner of Pub. Welfare, 20 Mass.App.Ct. at 725.[6] In sum, because of Brienzo’s failure to exhaust his administrative remedies, the Town is entitled to judgment as a matter of law on Count III of the amended complaint to the extent Brienzo seeks a determination as to whether the Town could replace Brienzo without complying with Massachusetts’ civil service laws.
That conclusion does not, however, resolve the entire Count III dispute because the administrative remedies of Chapter 31, Sections 41 and 42, do not appear to apply to the issue of whether the Town erroneously offered to Brienzo the rehiring preference provided by G.L.c. 152, §75A, nor has the Town identified any other administrative procedures which Brienzo was required to exhaust with respect to such a claim. Accordingly, the Town is not entitled to summary judgment, by reason of non-exhaustion, on the issue of the lawfulness of the rehiring preference offer.
Brienzo has cross-moved for partial summary judgment on Count III, contending that this court should resolve as a matter of law whether the Town erred in determining that the §75A rehiring preference applied to him. Chapter 152, Section 75A, provides in relevant part:
Any person who has lost a job as a result of an injury compensable under this chapter shall be given a preference in hiring by the employer for whom he worked at the time of compensable injury over any persons not at the time of application for reemployment employed by such employer; provided, however, that a suitable job is available.
G.L.c. 152, §75A. There are no reported cases, either from the courts or the Industrial Accident Board, interpreting what it means to have “lost a job” for purposes of this provision, but Brienzo argues that, because he was a civil service employee with his seniority intact and no break in service under G.L.c. 31, §33, he never lost his job. Chapter 31, Section 33 provides in relevant part that for the purpose of computing seniority of service:
the continuity of service of [a civil service] employee shall be deemed not to have been interrupted if [an absence from the payroll of more than six months] was the result of . . . (2) injuries received in the performance of duty for which compensation was paid pursuant to chapter one hundred and fifty-two, provided that the employee notifies the appointing authority, in writing, not later than six months after the final payment of compensation aforesaid that he is ready, willing, and able to do his former work and files with said appointing authority a certificate of a registered physician that he is able to perform the duties of his position in an efficient manner, and is restored to the payroll.
G.L.c. 31, §33. Brienzo seeks a declaration that, because he never lost his job within the meaning of §75A, the statute that controls is G.L.c. 152, §73A, which provides in relevant part:
Any employee who by reason of partial disability is entitled to receive compensation as provided by section sixty-nine from the commonwealth or from such county, city, town, or district, and who in the opinion of the head of any department or of any appointing officer, can be suitably employed in such department or by such officer in a position with duties adapted to his reduced earning capacity, may ... be so employed at a salary based on his reduced earning capacity as determined by the industrial accident board or a member thereof after a hearing . . . The head or appointing officer of the department in which such employee was employed previous to the injury causing his disability, may, *148 subject to the provisions of chapter thirty-one, temporarily employ a person to fill any vacancy in the original position of such employee that may be caused by his disability, pending the return of such employee to full-time employment at his regular duties.
G.L.c. 152, §73A. Assuming, arguendo, that Brienzo did not lose his job within the meaning of §75A, such that he was entitled to the benefit of §73A, the Town nonetheless did not act improperly. Section 73A appears to permit, but not require, “light duty” employment. Given the undisputed evidence in the summary judgment record that the Town’s Department of Public Works did not have light duty work available for someone who could not lift over ten pounds, the Town was not required by §73A to fill Brienzo’s position on a “temporarily only” basis. Accordingly, the Town is entitled to summary judgment on Count III insofar as Brienzo seeks a declaration that the Town violated G.L.c. 152, §73A by erroneously applying G.L.c. 152, §75A to him.
Finally, insofar as Count III seeks a declaratory judgment with respect to whether the time during which Brienzo collected benefits under G.L.c. 152 was creditable for purposes of retirement, the Town has not identified any specific administrative procedures that had to be exhausted with respect to such a claim. Thus, the Town’s motion for summary judgment on Count III should be denied as to that issue.
D. Count VI: Brienzo’s Claim of a Violation of Chapter 15 IB (1) The Statute of Limitations Defense
Count VI of the amended complaint alleges that the Town violated General Laws Chapter 15 IB, Section 4(16), which provides in relevant part that it is an unfair employment practice:
[flor any employer, personally or through an agent, to . . . discriminate against, because of his handicap, any person alleging to be a qualified handicapped person, capable of performing the essential functions of the position involved with reasonable accommodation . . .
G.L.c. 15 IB, §4(16) (2000). Specifically, Brienzo alleges that the Town discriminated against him by refusing to accommodate his shoulder injury and return him to work in 1994, May of 1995, and July of 1998. The Town first moves for summary judgment on the ground that the claim against it for refusal to return Brienzo to work in 1994 and accommodate him in 1995 is barred by the relevant statute of limitations.
The filing with the MCAD of a timely charge of discrimination is a prerequisite to a Superior Court action alleging discrimination under G.L.c. 151B, §4. Green v. Wyman-Gordon Co., 422 Mass. 551, 554 (1996); Charland v. Muzi Motors, Inc., 417 Mass. 580, 583-84 (1994). At all times relevant to this action, Chapter 15 IB, Section 5 required that such a charge be filed with the agency within six months of the occurrence of the discriminatory act. See G.L.c. 15 IB, §5 (2000).[7] The six-month filing rule is, in effect, a statute of limitations for discrimination claims. Christo v. Edward G. Boyle Ins. Agency, Inc., 402 Mass. 815, 817 (1988). It is undisputed that Brienzo did not file a complaint with the MCAD until September 8, 1998, several years after the alleged discriminatory acts.
Our inquiry cannot stop at that fact, however, because the six-month requirement of G.L.c. 15 IB, §5 is not a bar to administrative filing “where the unlawful conduct complained of is of a continuing nature.” 804 Code Mass. Regs. §1.03(2); Cuddyer v. The Stop & Shop Supermarket Co., 434 Mass. 521, 531 (2001); Rock v. MCAD, 384 Mass. 198, 205-08 (1990). The “continuing violation” exception permits the MCAD to remedy ongoing discriminatory policies by an employer. Lynn Teachers Union v. MCAD, 406 Mass. 515, 520 (1990); Rock v. MCAD, 384 Mass. at 207. Brienzo alleges genuine issues of material fact as to both the continuing character of the Town’s discriminatory conduct and the time when he became aware of the Town’s discrimination against him.[8]
A serial continuing violation exists when the plaintiff demonstrates an interlinked succession of related events, all arising from a common discriminatory animus, with at least one act occurring within the six-month limitations period. Cuddyer v. The Stop & Shop Supermarket Co., 434 Mass. at 531 n. 12. At bar, the denial of Brienzo’s request to return to employment in 1995 (because of the lack of light duty work) and the denial of his request to return to work in 1998 (both because of the lack of an open, full-time position and the no lay off clause of the CBA) were two discrete incidents. The denials were different in kind and not close enough in time to be substantially related sufficient to demonstrate a continuing violation. Significantly, there were no intervening requests by Brienzo to return to work and Brienzo never requested any type of accommodation. It is unlikely that, at trial, Brienzo will be able to establish that the denials constituted an ongoing pattern of discrimination based on handicap. See Klaus v. Amherst, MCAD No. 94-SEM-0431 (June 28, 2000) (finding no continuing violation because there was too long a break between the discrete acts of employer’s 1991 failure to place in employee’s file letter recommending certain accommodations for his dyslexia, a 1992 promotional exam on which employee did poorly because he was afraid to request an accommodation, and the employer’s 1994 denial of a requested accommodation on another promotional exam). Cf. Rapoza v. Ocean Spray Cranberries, Inc., MCAD No. 95-BEM-2293 (October 4, 2001) (finding a continuing violation where the employer denied requests for accommodation on numerous occasions over the course of two years, thus engaging in a pattern of denying accommodation based on medical information provided by the employee).
*149 Further, even assuming a sufficient pattern to constitute a continuing violation, the Rule 56 record suggests that Brienzo knew in 1995 that the Town had refused to reinstate him because there was no light duty work available. It is undisputed that Brienzo did not want light duty and believed that he was entitled to reinstatement to his former position. Those undisputed facts are wholly incongruous with Brienzo’s claim of discrimination and certainly do not advance his contention that there is a genuine issue of material fact as to when he became aware that the “no light duly work” was pretextual. Cf. Cuddyer v. Stop & Shop Supermarket Co., 434 Mass. at 541 (concluding that where the plaintiff was sexually harassed off and on and her employer initially took some action to deal with the problem, it was a jury question as to whether a reasonable person in the plaintiffs position would have concluded that the work situation was pervasive and hopeless, requiring the filing of a complaint). Brienzo has failed to demonstrate a genuine issue of material fact that the Town’s violation was continuing in character and that his filing of a charge with the MCAD on September 8, 1998 was, therefore, timely. The Town shall have summary judgment on that aspect of Count VII.
Brienzo fares better, however, on another aspect of the Town’s statute of limitations attack upon Count VII. He argues that the statute of limitations was tolled by the Town’s failure to comply with G.L.c. 151B, §7, which requires all employers conspicuously to post notices prepared or approved by the MCAD explaining the provisions of Chapter 15 IB. Brienzo is correct that the six-month statute of limitations in discrimination cases may be equitably tolled where the employer affirmatively misled the employee into not pursuing his rights or where the plaintiff is excusably ignorant of the six-month filing period. Andrews v. Arkwright Mut. Ins. Co., 423 Mass. 1021, 1022 (1996); Adamczyk v. Augat, Inc., 52 Mass.App.Ct. 717, 724, rev. den., 435 Mass. 1106 (2001). Ignorance of the filing deadline has been held to be excusable where the employer fails conspicuously to post the informational notices required by the EEOC. Mercado-Garcia v. Ponce Fed. Bank, 979 F.2d 890, 896 (1st Cir. 1992). The tolling of the filing period ends when the employee receives actual notice of his statutory rights or retains an attorney. Id. In the instant case, there is a factual issue as to when the Town first posted the required notices underG.L.c. 151B, §7. In sum, while the Town prevails on the “continuing violation" dispute, Brienzo will be permitted to pursue, at trial, his “no notice” response to the Town’s statute of limitations defense.
(2) The “No Discrimination” Defense
The Town next contends that it is entitled to summary judgment because Brienzo has no reasonable expectation of demonstrating, at trial, Chapter 15 IB handicap discrimination based on the Town’s actions in either 1995 or 1998. For purposes of the summary judgment assessment, this court will employ the three stage McDonnell Douglas[9] analytical framework which seeks to organize the evidence and assign the burden of production and persuasion in cases, such as that at bar, where there is no direct evidence of discrimination. See Lipchitz v. Raytheon Co., 434 Mass. 493, 508 (2001). In the first stage, the plaintiff must demonstrate a prima facie case of discrimination with evidence that eliminates the most common nondiscriminatoiy reasons for the adverse employment action and creates a presumption of discrimination. Abramian v. President & Fellows of Harvard College, 432 Mass. 107, 116 (2000). In the second stage, the employer may rebut the presumption by articulating and supporting with credible evidence a nondiscriminatory reason for its employment decision. Id. at 116-17. Finally, in the third stage, the plaintiff must persuade the factfinder that the employer’s articulated nondiscriminatory reason is a pretext for discrimination, that is, that the employment decision was made with a discriminatory intent, motive or state of mind and that the discriminatory animus was the determinative cause of the adverse employment decision. Lipchitz v. Raytheon Co., 434 Mass. at 502-06; Abramian v. President & Fellows of Harvard College, 432 Mass. at 117.
At bar, Brienzo has no reasonable expectation of prevailing on his claim of handicap discrimination based on the Town’s 1995 actions because, on the present summary judgment record, he falls short of the Abramian first stage sine qua non, to wit, he has failed to establish a prima facie case under Chapter 15 IB. To establish a prima facie case of handicap discrimination, the plaintiff must present credible evidence that he is a person with a handicap or his employer perceived him as handicapped, that he was nonetheless qualified to perform the essential functions of his position with or without reasonable accommodation, and that he suffered an adverse employment action by the employer. Dartt v. Browning-Ferris Industries, Inc., 427 Mass. 1, 3 (1998). In order to avoid summary judgment, the plaintiff has the burden of demonstrating a genuine issue of material fact as to his ability to perform the essential functions of his position. Beal v. Board of Selectmen of Hingham, 419 Mass. 535, 542 (1995). The evidence in the summaryjudgment record, if believed, would permit a fact finder to conclude that Brienzo’s position was a laboring job requiring top physical condition and included the duties of driving heavy equipment, equipment maintenance, asphalt repair, tree and brush cutting, landscaping, and pick and shovel laboring. In 1995, Brienzo’s medical restrictions were that he had limited left shoulder movement and could not engage in repetitive work or heavy lifting. The only evidence introduced by Brienzo is his own testimony that, if the heavy lifting and repetitive work was reassigned to others, he felt he could do his job in 1995 because he was still capable of driving the equipment. However, *150 he has not introduced any evidence that heavy lifting and repetitive movements were not essential functions ofhis job. Thus, Brienzo cannot establish aprimafacie case of handicap discrimination and the Town is entitled to summary judgment insofar as his Chapter 15 IB claim is based on the failure to accommodate him in 1995. See Laurin v. Providence Hosp., 150 F.3d 52, 59 (1st Cir. 1998) (granting summary judgment to the employer where the plaintiff failed to introduce competent evidence rebutting the employer’s assertion that certain job tasks were essential functions).[10]
Additionally, Brienzo contends that the Town discriminated against him based on his handicap in 1998 because even though he was able to return to work without any restrictions and no longer handicapped, the Town perceived him as handicapped and offered him only a rehiring preference, under G.L.c. 152, §75A, instead of returning him to his former job, under G.L.c. 152, §73A. Insofar as the complaint alleges discrimination based on a perceived handicap, there is no evidence in the summary judgment record that, in 1998, the Town regarded Brienzo as suffering from a limitation on a major life activity. See Talbert Trading Co. v. MCAD, 37 Mass.App.Ct. 56, 61, rev. den., 418 Mass. 1110 (1994). But, Brienzo clearly had a record of a handicap, and his theory appears to be that if the Town erroneously offered him only a preference and not immediate reinstatement, the Town’s action constitutes a perse violation of Chapter 15 IB because the action was necessarily based on his prior handicap.
Brienzo has, however, omitted to offer any evidence which would call into question the Town’s professed reason for its offer of a hiring preference rather than reinstatement, to wit, its reluctance to violate the CBA which posed an impediment to reinstatement. Such a reluctance is a legitimate, non-discriminatory reason for its offer. Cf. Patel v. Everett Indust., MCAD No. 99-BEM-0451 (September 18, 1996) (noting that, where collective bargaining agreement bars requested accommodation of handicapped individual, the agreement can form the basis of an undue hardship defense); Feliciano v. Rhode Island, 160 F.3d 780, 787 (1st Cir. 1998) (noting that the ADA does not require an employer to violate a collective bargaining agreement and the rights of other employees in order to make a reasonable accommodation).
Any error of law by the Town in applying the workers’ compensation statute is also a non-discriminatory reason for not reinstating Brienzo. To avoid summary judgment, Brienzo must introduce some evidence raising a genuine issue of fact with respect to whether the Town’s interpretation of Chapter 152 was a pretext for discrimination. See Lipchitz v. Raytheon Co., 434 Mass. at 502-03; Abramian v. President & Fellows of Harvard College, 432 Mass. at 117. The mere fact that particular employment action may violate the provisions of Chapter 152 does not mean that it is discriminatory. Joubert v. United Parcel Service, Inc., MCAD No. 95-SEM-1016 (July 26, 2000). However, Brienzo has not proffered any other evidence that the Town acted with a discriminatory animus in reading Chapter 152 to preclude his reinstatement,
Brienzo has no reasonable expectation of demonstrating handicap discrimination under Chapter 15 IB based either on the Town’s 1995 failure to accommodate his shoulder injury and reinstate him or on its 1998 failure to return him to his former position, Accordingly, the Town is entitled to judgment as a matter of law on Count VI of the amended complaint.
II. Union’s Motion for Summary Judgment
The Massachusetts Public Employees District Council, Local Union 1249, Scripsack, Mass. Laborers District Council, James Merloni, Jr. and Nicholas Bonfiglio (collectively, “the Union”), move for summary judgment on Counts IV, v. and VII of the amended complaint.
A. Count IV: Brienzo’s Claim of the Union’s Breach of Duty of Fair Representation
Count IV alleges that the Union breached its duty of fair representation by pressuring the Town not to return Brienzo to work in May and June of 1998. The Union contends that it is entitled to judgment as a matter of law on this claim because Brienzo failed to exhaust his administrative remedies prior to seeking relief in this court. General Laws Chapter 150E creates a scheme in which the Labor Relations Commission is granted broad powers to resolve labor disputes including those concerning the duty of fair representation. Johnston v. School Committee of Watertown, 404 Mass. 23, 26 (1989); Leahy v. Local 1526, American Federation of State, County & Municipal Employees, 399 Mass. 341, 349 (1987). Where an employee alleges breach of the union’s duty of fair representation, the court should not exercise jurisdiction over the fair representation claim until the Labor Relations Commission has had the opportunity to apply its expertise to resolve any genuine issues of material fact bearing on such claim. Johnston v. School Committee of Watertown, 404 Mass. at 26-27; Leahy v. Local 1526, American Federation of State, County & Municipal Employees, 399 Mass. at 350. Our conclusion must be, therefore, that although the summary judgment record at bar reveals the existence of genuine issues of material fact with respect to whether or not the Union breached its duty of fair representation, Brienzo’s failure to file a claim with the Labor Relations Commission precludes him from seeking relief from this court and the Union is entitled to summary judgment on Count IV of the amended complaint.
B. Count V: Brienzo’s Claim of the Union’s Tortious Interference with Employment Contract
Count V alleges that the Union interfered with Brienzo’s employment contract with the Town by inducing the Town not to return him to work. The Union *151 moves for summary judgment on the ground that Brienzo has no reasonable expectation of establishing such a claim. To prevail on a claim of intentional interference with contract, the plaintiff must show that he had a contract with a third party, the defendant knew of that contract, the defendant intentionally interfered with the contract through improper means or motives, and the plaintiff was harmed by the defendant’s actions. Shea v. Emmanuel College, 425 Mass. 761, 764 (1997); G.S. Enterprises, Inc. v. Falmouth Marine, Inc., 410 Mass. 262, 272 (1991). Here, Brienzo alleges that the Union interfered with his employment contract by using means unlawful under G.L.c. 150E, to wit, an illegal vote. Although the Union contends that Brienzo cannot prove that the alleged illegal vote occurred, the summary judgment record suggests the existence of a genuine issue of material fact on that point. Accordingly, the Union has not demonstrated that it is entitled to judgment as a matter of law on the intentional interference claim, and it is not entitled to summary judgment on Count v. of the complaint.[11]
C. Count VII: Brienzo’s Claim of the Union’s Violation of Chapter 15 IB
Count VII of the amended complaint alleges that the Union violated General Laws Chapter 15 IB, Section 4(2), which provides in relevant part that it is an unfair employment practice:
for a labor organization ... because of the handicap of any person alleging to be a qualified handicapped person, to exclude from full membership rights or to expel from its membership such individual or to discriminate in any way against any of its members or against any employer or any individual employed by an employer unless based upon a bona fide occupational qualification.
G.L.c. 15IB, §4(2). Specifically, Brienzo alleges that the Union discriminated against him by taking a secret vote not to return him to work in 1998 and then coercing the Town into not returning him to work. Even assuming that Brienzo can establish a prima facie case of handicap discrimination, the fact that, following his workers’ compensation leave, the Union opposed the Town’s lay off of another union worker in order to open up a position for Brienzo is a legitimate non-discriminatory reason for the Union’s opposing his return. Cf. Patel v. Everett Indust., MCAD No. 99-BEM-0451 (September 18, 1996) (noting that, where collective bargaining agreement bars requested accommodation of handicapped individual, the agreement can serve as the basis of an undue hardship defense); Feliciano v. Rhode Island, 160 F.3d 780, 787 (1st Cir. 1998) (noting that ADA does not require employer to violate a collective bargaining agreement and rights of other employees in order to make a reasonable accommodation). Brienzo has not introduced any evidence that thereasonvoicedby the Union — to wit, topr otect the job of another — was a pretext for handicap discrimination against Brienzo. See Lipchitz v. Raytheon Co., 434 Mass. at 504-06 (holding that, to prevail under Chapter 15IB, plaintiff must show that defendant acted with a discriminatory intent, motive or state of mind and that the discriminatory animus was the determinative cause of the adverse employment decision). Accordingly, Brienzo has no reasonable expectation of demonstrating a violation of Chapter 15 IB at trial, and the Union is entitled to judgment as a matter of law on Count VII of the complaint.
CONCLUSION AND ORDER
For the reasons aforestated, the several motions offered by the parties shall be determined as follows:
Count I (Breach of Contract by Town):
The Motion of the Town of Acushnet, the Board of Public Works and Matthew Goulet for Summary Judgment is ALLOWED (pp. 10-11).
Count II (Violation of G.L.c. 152, §75B by Town):
The Motion of the Town of Acushnet, the Board of Public Works and Matthew Goulet for Summary Judgment is ALLOWED (p. 12).
Count III (Declaratory Judgment):
-The Motion of the Town of Acushnet, the Board of Public Works and Matthew Goulet for Summary Judgment upon the breach of contract claim is ALLOWED (p. 13).¶
-The Motion of the Town of Acushnet, the Board of Public Works and Matthew Goulet for Summary Judgment upon the claim of failure to exhaust through the Civil Service Commission is ALLOWED (p. 15).
-The Motion of the Town of Acushnet, the Board of Public Works and Matthew Goulet for Summary Judgment upon the claim of failure to exhaust on the issue of the lawfulness of the offer of the rehiring preference is DENIED (p. 16).
-Brienzo’s Cross Motion for Summary Judgment upon the claim that the Town erred in applying G.L.c. 152, §75A to him vice G.L.c. 152, §73A is DENIED and summary judgment shall enter for the Town on the issue (p. 17). It is DECLARED and ADJUDGED that the Town did not violate G.L.c. 152 by failing to fill his position only temporarily under Section 73A or by applying the rehiring preference in Section 75A.
-The Motion of the Town of Acushnet, the Board of Public Works and Matthew Goulet for Summary Judgment with respect to whether Brienzo’s G.L.c. 152 benefits are creditable for purposes of retirement is DENIED (p. 17).
*152 Count VI (Violation of G.L.c. 15 IB):
(“Statute of Limitations” Defense)
-With respect to the “continuing violation” dispute, the Motion of the Town of Acushnet, the Board of Public Works and Matthew Goulet for Summary Judgment is ALLOWED (p. 20).
-With respect to the “no notice” dispute, the Motion of the Town of Acushnet, the Board of Public Works and Matthew Goulet for Summary Judgment is DENIED (p. 21).
(“No Discrimination” Defense)
-The Motion of the Town of Acushnet, the Board of Public Works and Matthew Goulet for Summary Judgment upon the claim of G.L.c. 15 IB handicap discrimination is ALLOWED (pp. 23-24).
Count IV (Breach of Duty of Fair Representation):
The Motion of the Massachusetts Public Employees District Council, Local Union 1249, Ted Scripsack, Mass. Laborers District Council, James Merloni, Jr. and Nicholas Bonfiglio for Summary Judgment is ALLOWED (pp. 25-26).
Count V (Tortious Interference with Employment Contract):
The Motion of the Massachusetts Public Employees District Council, Local Union 1249, Ted Scripsack, Mass. Laborers District Council, James Merloni, Jr. and Nicholas Bonfiglio for Summary Judgment is DENIED (p. 26).
Count VII (Violation of G.L.c. 15 IB):
The Motion of the Massachusetts Public Employees District Council, Local Union 1249, Ted Scripsack, Mass. Laborers District Council, James Merloni, Jr. and Nicholas Bonfiglio for Summary Judgment is ALLOWED (p. 27).
Miscellaneous:
-The Motion of the Town of Acushnet, the Board of Public Works and Matthew Goulet to Strike Affidavits Submitted in Support of Plaintiffs Opposition is DENIED.
-Plaintiff Brienzo’s Motion for an Award of Fees Pursuant to Mass.R.Civ.P. 11 is DENIED.

The Town's motion to strike the Brienzo and Fleming affidavits is DENIED. The affidavits are based on personal knowledge and are otherwise admissible. To the extent that the Town complains that-the affidavits contain legal opinions, this court rejects the complaint because an affidavit may contain statements establishing a party’s view of the circumstances involved in the case. See Jackson v. Action for Boston Community Development, Inc., 403 Mass. 8, 12 & n. 2 (1988). This court does not, however, accept uncritically the plaintiff s characterization of the law in the affidavits. Because there is no evidence that the Town’s motion to strike was brought in bad faith, plaintiffs motion for an award of fees pursuant to Mass.R.Civ.P. 11 is DENIED.

The minutes of the Board meeting recite that the Board voted to “hold request in reference to Raymond Brienzo, return to work after an injury.”

On August 8, 2000, Brienzo filed an MCAD complaint against the Union for retaliation based on its refusal to assist with his vacation request.

This court notes, but does not consider dispositive, the fact that the Civil Service Commission, in ruling on Brienzo’s denial of vacation time claim, found that because Brienzo failed to raise the issue of unlawful lay off in 1998, he could not, in 2000, base his claim for denial of vacation benefits on that lay off.

Further, to the extent that Brienzo specifically argues that he was entitled to immediate reinstatement under G.L.c. 31, §37, that section, too, offers an administrative remedy for its violation. Section 37 provides in relevant part:
An appointing authority may grant a permanent employee a leave of absence or an extension of leave of absence; provided that any grant for a period of longer than fourteen days shall be given only upon written request filed with the appointing authority by such person, or by another authorized to request such leave on his behalf, and shall be in writing. The written request shall include a detailed statement of the reason for the requested leave and, if the absence is caused by illness, shall be accompanied by substantiating proof of such Illness . . . Any person who has been granted a leave of absence or an extension thereof pursuant to this section shall be reinstated at the end of the period for which the leave was granted and may be reinstated earlier. If the appointing authority, upon demand of such person, shall fail to reinstate him to his civil service position, such person may request a hearing before the administrator.
Brienzo's failure to exhaust with respect to denial of an immediate reinstatement, if any, also dooms that aspect of Count III which seeks relief on the “reinstatement” ground.

The Legislature has recently amended c. 15IB, §5 to increase the MCAD filing period to 300 days after the discriminatory act. See St. 2002, c. 223, §1. This increased filing period applies only to claims arising after the effective date of the amendment. See St. 2002, c. 223, §4.

The Town’s apparent failure to post the notices required by G.L.c. 151B, §7, are, Brienzo argues, supportive of his claim not to have been aware of the discrimination upon its occurrence.

McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

Brienzo is not assisted by Chapter 152, Section 75B(1), which provides that ”[a]ny employee who has sustained a work-related injury and is capable of performing the essential functions of a particular job, or who would be capable of performing the essential functions of such job with reasonable accommodations, shall be deemed to be a qualified handicapped person under the provisions of chapter one hundred and fifty-one B.” G.L.c. 152, §75B(1) (2000).

In the view of this court, the fact that the intentional interference claim necessarily implicates the Union’s duty of fair representation does not bar the claim, despite the dismissal of the direct fair representation claim for failure to exhaust administrative remedies.